Edward F. **DIXON** et al., Plaintiffs,

v.

**PENNSYLVANIA CRIME COMMIS-SION** et al., Defendants.

Civ. A. No. 71–488.

United States District Court,
Middle D. Pennsylvania.

Feb. 22, 1972.

Smith, Fox, Roberts, Foerster & Finkelstein, Harrisburg, Pa., for plaintiffs.

Wm. H. Smith, Frank P. Lawley, Jr., Harrisburg, Pa., Alan L. Adlestein, Pa. Crime Comm., St. Davids, Pa., Henry R.

Wray, Asst. Atty. Gen., Russell M. Coombs, Harrisburg, Pa., for defendants.

MEMORANDUM

NEALON, District Judge.

Plaintiffs, individually and on behalf of all others similarly situated, have filed a Civil Rights complaint under 42 U.S.C. § 1983 seeking declaratory and injunctive relief. They contend that the defendants are depriving them of rights guaranteed by the Fourth, Fifth, Ninth, Tenth and Fourteenth Amendments of the United States Constitution. The basis of their complaint concerns an investigation being conducted by the Pennsylvania Crime Commission into allegedly fraudulent practices in connection with the awarding of state contracts for mine flushing projects. While plaintiffs seek broad injunctive and declaratory relief, the only matter presently before the Court is plaintiffs' application for the convening of a three-judge court pursuant to 28 U.S.C. §§ 2281 and 2284 to adjudicate their claim that 71 P.S. § 307–7 et seq., the legislation creating and empowering the Commission, is unconstitutional.

■ On November 16, 1971, this Court denied plaintiffs' request for a preliminary injunction as to Counts I–IV of their original complaint on the basis that their offer of proof failed, as a matter of law, to show a bad faith investigation on the part of defendants or irreparable harm to the plaintiffs. National Land & Investment Company v. Specter, 428 F.2d 91 (3rd Cir. 1970). Subsequently, on December 20, 1971, plaintiffs filed an amended complaint adding additional and diverse challenges to the constitutionality of the Crime Commission. However, based upon the files and the records in the instant case and after reviewing the briefs submitted, the Court is of the opinion that plaintiffs' application to convene a three-judge court must be denied.[1]

■ Because the United States Supreme Court has recognized that the requirement of a three-judge court has imposed a serious drain upon the federal judicial system, a single district judge has an important responsibility in determining whether a three-judge court should be convened. See Phillips v. United States, 312 U.S. 246, 61 S.Ct. 480, 85 L.Ed. 800 (1941). Accordingly, the district judge to whom such application is initially made is required to decide not only whether the constitutional question raised is substantial, but also whether the complaint at least formally alleges a basis for equitable relief. Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962); Ex parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933); Majuri v. United States, 431 F.2d 469 (3rd Cir. 1970).

■ In determining the substantiality of a constitutional question, the district court must make a judicial decision. Ex parte Poresky, *supra*. Its function is analagous to that of a court reviewing a complaint for legal sufficiency under Rule 12(b) (1) or 12(b)

---

[1]. Originally, defendants contended that plaintiffs lacked standing to attack the constitutionality of the Crime Commission. They argued that since plaintiffs had not asserted in their original complaint that the individual or corporate plaintiffs had themselves been called to appear before the Commission or that they expected to be called, they lacked standing to assert the rights of those who did appear. See Tileston v. Ullman, 318 U.S. 44, 63 S.Ct. 493, 87 L.Ed. 603 (1943). Whatever the validity of this argument as to plaintiffs' original complaint, the amended complaint states that the corporate plaintiffs were subpoenaed to appear and produce corporate records before the Crime Commission on October 5 and October 7, 1971. Hence, at least insofar as the corporate plaintiffs are concerned it is clear that they possess a sufficient adversary interest in their own legally protected rights to insure proper presentation of these issues facing the court. Jenkins v. McKeithan, 395 U.S. 411, 423, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969).

(6) of the Fed.R.Civ.P. Majuri v. United States, *supra.* at 472. For these purposes, the district court is bound to construe the complaint liberally in favor of the plaintiff and to accept the well-pleaded facts of a complaint as true. Id. However, the court is not bound to accept conclusory allegations that are unsupported and unsupportable. Negrich v. Hohn, 379 F.2d 213, 215 (3rd Cir. 1967). Mere conclusory allegations that a state statute is unconstitutional do not automatically require a district judge to invoke a three-judge court. Bailey v. Patterson, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962).

 Plaintiffs' lengthy complaint contains many allegations of purported wrongdoing on the part of the Crime Commission and other state officials. However, the only issue to be decided in this aspect of the case is whether the legislation creating the commission is constitutional, either on its face or as applied. Consequently, only those allegations which relate to this issue will be considered at this time. Plaintiffs' other allegations which relate to the alleged unconstitutional administration of the Crime Commission Act by defendants do not require consideration by a three-judge court but will be considered by this Court at the proper time. Phillips v. United States, *supra*; Ex parte Bransford, 310 U.S. 354, 60 S.Ct. 947, 84 L.Ed. 1249 (1940); and cases cited Barron and Holtzoff (Wright ed.) § 52, n. 98.1.

Guided by these principles, we now turn to a consideration of whether plaintiffs' challenges require the convening of a three-judge court. A careful reading of plaintiffs' complaint and briefs reveals that essentially their challenge is based on the contention that the Commission performs an accusatory function, and that under Jenkins v. McKeithin, 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969), many of the rigors of procedural due process must be afforded to witnesses appearing before it.[2] On the other hand, defendants urge that *Jenkins* is not controlling here and that the plaintiffs' constitutional challenge is insubstantial because it has been foreclosed by the Supreme Court's prior decision in Hannah v. Larche, 363 U.S. 420, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960). I agree.

In *Hannah,* the Supreme Court made it clear that different administrative agencies may be governed by different procedural requirements, depending on whether it performs an accusatory or investigatory function.

" 'Due process' is an elusive concept. Its exact boundaries are indefinable, and its content varies according to specific factual contexts. Thus, when governmental agencies adjudicate or make binding determinations which directly affect the legal rights of individuals, it is imperative that those agencies use the procedures which have traditionally been associated with the judicial process. On the other hand, when governmental action does not partake of an adjudication, as for example, when a general fact-finding investigation is being conducted, it is not necessary that the full panapoly of judicial procedures be used. . . .

It is probably sufficient merely to indicate that the rights claimed by respondents are normally associated with adjudicative proceedings, and that since the Commission does not adjudicate it need not be bound by adjudicatory procedures. . . . .

---

2. Specifically, plaintiffs allege that the Statutes and the Rules of the Commission allows the Commission to (1) unlawfully exercise an accusatory function in making determinations of criminal culpability, (2) unlawfully expose specific individuals and brand them as criminals in public, (3) deny the effective representa- tion of counsel since counsel may not participate in the proceedings other than to accompany and advise his client, (4) hold open hearings in violation of plaintiffs' right to privacy, and (5) deny plaintiffs the right to confront and cross-examine their accusers and the right to know their identity.

The investigative process could be completely disrupted if investigative hearings were transformed into trial-like proceedings, and if persons who might be indirectly affected by an investigation were given an absolute right to cross-examine every witness called to testify. Fact-finding agencies without any power to adjudicate would be diverted from these legitimate duties and would be plagued by the injection of collateral issues that would make the investigation interminable. Even a person not called as a witness could demand the right to appear at the hearing, cross-examine any witnesses whose testimony or sworn affidavit allegedly defamed or incriminated him, and call an unlimited number or witnesses of his own selection. This type of proceeding would make a shambles of the investigation and stifle the agency in its gathering of facts."

363 U.S., at 440–444, 80 S.Ct. at 1514–1515.

Subsequently the Supreme Court expressly reaffirmed this accusatory-investigatory distinction in Jenkins v. McKeithen, *supra*. There the Court upheld the adequacy of a complaint challenging the constitutional validity of a state commission created to investigate and make findings relating to violations of certain criminal laws. Relying principally on the fact that the Commission exercised a purely accusatory function as opposed to a legislative function, the Court distinguished *Hannah* and held that where an investigatory commission makes an actual finding that a specific individual is guilty of a crime, the essentials of due process must be afforded to witnesses appearing before the Commission. The Court in *Jenkins* further distinguished *Hannah* by pointing out that in *Hannah* any adverse consequences to those being investigated, such as being subjected to public opprobrium were purely conjectural, and, in any case, even if such consequences were to follow, they were considered to be merely collateral and "not . . . the re-

sult of any *affirmative determination* made by the Commission". Jenkins v. McKeithan, *supra* at 427, 89 S.Ct. at 1851. (emphasis supplied).

█ Thus the question to be resolved in the instant case is whether the Pennsylvania Crime Commission has an accusatory function and is to be governed by the rule in *Jenkins* or whether it has an investigative, fact-finding function and is to be controlled by the rule in *Hannah*. Plaintiffs here have attempted to apply the allegations of the *Jenkins* complaint to the Pennsylvania Crime Commission Act but that attempt cannot survive close scrutiny because a careful reading of the statute reveals that. the basic purpose of the Pennsylvania Act is clearly legislative rather than prosecutive.

As the Supreme Court found in *Hannah*, the purpose of the Pennsylvania Crime Commission is ". . . to find facts which may subsequently be used as the basis for legislative or executive action." Hannah v. Larche, *supra* at 441, 80 S.Ct. at 1514. For example, the Commission is charged with the power and duty "[t]o develop standards and make recommendations for actions which may be taken by the State and local governments, . . . 71 P.S. § 307–7(2); [t]o investigate all crime generally, . . . 71 P.S. § 307–7(3); [t]o carry out continued research and planning to improve the quality of criminal justice . . ." 71 P.S. § 307–7(5) and to "make a detailed written report of every completed investigation which may include recommendations for *legislative* or *administrative* action." 71 P.S. § 307–7(6). (emphasis supplied)

In sum then, the Crime Commission is an investigative body created to discover and publicize the state of affairs in the criminal area to the end that helpful legislation may be proposed and receive needed public support. It does not adjudicate or make any determinations of guilt or innocence. Therefore, unlike the situation in *Jenkins*, I conclude that the Act involved here when analyzed in light of the allegations of the complaint

remains an investigatory body and plaintiffs' bald, conclusory allegations cannot convert it into an accusatory one. This being so, plaintiffs' constitutional attack based on *Jenkins* does not present a substantial constitutional question requiring the convening of a three-judge court.[3]

 Next, plaintiffs contend that the Rules of the Commission violate their constitutional guarantees against unreasonable searches and seizures. It is claimed that the Rules allow the Commission to require the production of masses of documents and records regardless of relevancy or expense of production and permits the Commission to conduct a general fishing expedition into plaintiffs' books and records to secure evidence without a prior charge or complaint. This element of plaintiffs' attack against the Commission would have had considerable merit several decades ago, but it has been completely superseded by current law as it relates to administrative agencies. Except for limitations concerning breadth and relevancy, the Fourth Amendment does not now restrict an administrative subpoena for records or an administrative requirement of reports. 1 Davis Administrative Law Treatise § 3.05 (1958). In Oklahoma Press Pub. Co. v. Walling, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946), the Court answered the petitioner's Fourth Amendment objections to an administrative subpoena duces tecum by the simple observation that such a subpoena involves no question of actual search and seizure. Id. at 195. This at-

titude was later reaffirmed in United States v. Morton Salt Co., 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950):

> "Although the 'right to be let alone . . .' is not confined literally to searches and seizures as such, but extends as well to the orderly taking under compulsion of process, . . . neither incorporated nor unincorporated associations can plead an unqualified right to conduct their affairs in secret."

Id. at 651, 70 S.Ct. at 368.

The only constitutional limitation placed on administrative subpoenas for records or requests involve restrictions on their breadth and relevancy:

> "Of course a governmental investigation into corporate matters may be of such a sweeping nature and so unrelated to the matter properly under inquiry as to exceed the investigatory power . . . But it is sufficient if the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant."

Id. at 652, 70 S.Ct. at 369.

Thus, although a particular subpoena may be challenged on Fourth Amendment grounds, the allegation that an investigatory agency such as the Pennsylvania Crime Commission has the power to require the production of masses of documents and books in itself does not present a substantial constitutional question requiring the convening of a three-judge court.[4]

---

3. It should also be noted that the United States District Court for the District of New Jersey has rejected a similar challenge to the New Jersey Commission of Investigation which closely resembles the Pennsylvania Commission. Sinatra v. New Jersey S.C.I., 311 F.Supp. 678 (D. N.J. 1970); Bruno v. New Jersey S.C. I., Civ No. 1281–70 (D.N.J. filed Sept. 22, 1970).

4. As far as challenges to the sufficiency of the individual subpoenas are concern-

ed, adequate state remedies are available to the plaintiffs. Under Pennsylvania law, an administrative agency may enforce subpoenas for records only by applying to a court, and prevailing at a hearing in which the respondent is given full opportunity to raise all defenses, including constitutional ones. Cathcart v. Crumlish, 410 Pa. 253, 189 A.2d 243 (1963); Alpha Club v. Liquor Control Bd., 363 Pa. 53, 68 A.2d 730 (1949); Com. ex rel. Chidsey v. Mallen, 360 Pa.

Plaintiffs further complain that the legislation creating the Commission is unconstitutionally vague in that it lacks proper standards and its provisions are not sufficiently specific to be commonly understood. However, they do not cite any authority or indicate which provisions of the statute are so indefinite as to be violative of due process. A statute is not unconstitutionally vague merely because clearer and more precise language could have been used; it is sufficient if it contains general principles to be followed and leaves the details of ministerial acts in the hands of those charged with the duty of administering the statute. United States v. Petrillo, 332 U.S. 1, 67 S.Ct. 1538, 91 L.Ed. 1877 (1947). Because of its investigatory role, the Crime Commission should not be unduly restricted in its activities of inquiring relative to "organized or syndicate crime," to "causes of crime and delinquency," and to "carrying out continued research and planning to improve the quality of criminal justice." Therefore, plaintiffs' allegations that the statute is unconstitutionally vague and violative of due process is without merit.

Finally, I have considered all of plaintiffs' other challenges to the unconstitutionality of the Crime Commission, including their claim that the statute is an improper delegation of judicial power and unlawfully impairs plaintiffs' contract obligations under Article I, Section 10 of the United States Constitution, and conclude that they are frivolous and equally without merit. Accordingly, since none of plaintiffs' challenges raise any substantial constitutional questions, plaintiffs' application to convene a three-judge court will be denied.

606, 63 A.2d 49 (1949). In fact, plaintiffs admit that they are vigorously contesting the sufficiency of a subpoena directed at one of the plaintiffs, Common-

wealth Development Association of Pennsylvania, Inc., in Commonwealth Court at the present time.