Edward F. **DIXON** et al.

v.

**PENNSYLVANIA CRIME COMMISSION** et al.

**Civ. No. 71–488.**

United States District Court,
M. D. Pennsylvania.

March 27, 1975.

Richard C. Fox, Markowitz, Kagen & Griffith, York, Pa., for plaintiffs.

Kathleen Herzog Larkin, Deputy Atty. Gen., Pa. Dept. of Justice, Frank P. Lawley, Jr., Harrisburg, Pa., for defendants.

## MEMORANDUM AND ORDER

NEALON, District Judge.

Now before the Court are (a) plaintiffs' "Motion to Drop Party Plaintiff, To Drop Parties Defendant, To Redesignate Parties Defendant, To Amend Caption, And To File And Serve Second and Amended Supplemental Complaint Accordingly" (motion to amend) and (b) motions to dismiss filed by the above-captioned defendants. The underlying complaint which plaintiffs now seek to amend (and which, in itself, is actually an amended and supplemental version of the original complaint filed in this case—see *infra*) is a class action alleging violations of the Civil Rights Act, 42 U.S.C. § 1983; Article I, Section 10 of the United States Constitution; and the Fourth, Fifth, Sixth, Ninth and Fourteenth Amendments. It requests declaratory and injunctive relief as well as damages. The basis of that complaint is an investigation which was conducted by the Pennsylvania Crime Commission [1] into allegedly fraudulent practices in connection with the awarding of state contracts for mine flushing projects. The motion to amend seeks in essence to withdraw the class action portion of the complaint, to drop the Pennsylvania Crime Commission and the Commonwealth of Pennsylvania as defendants, and to sue the other defendants [2] only in their individual, and not their official capacities; it also seeks to withdraw the request for equitable relief and to increase the total amount of damages sought from $950,000 to $7,950,000. The motions to dismiss are essentially for lack of subject-matter jurisdiction and for failure to state a claim upon which relief can be granted. Before turning to the motions presently at issue here, however, it is necessary to relate in some detail this case's long and complex procedural history, as that history forms at least a partial basis for the disposition of the matters presently before the Court.

This suit was initially filed on November 8, 1971, and named as defendants the First National Bank of Mt. Carmel, Pennsylvania, the Pennsylvania Crime Commission, J. Shane Creamer, Milton Shapp and the Commonwealth of Pennsylvania. On the same date, this Court denied plaintiffs' application for a temporary restraining order, and, following a hearing on November 16, 1971, also denied plaintiffs' motion for a preliminary injunction. Thereafter, on December 20, 1971, plaintiffs moved to amend their complaint by, *inter alia*, dropping the First National Bank of Mt. Carmel and Milton Shapp as defendants, and adding Robert P. Casey as Auditor General as a defendant, and also moved to convene a Three-Judge District Court pursuant to 28 U.S.C. § 2281 for the reason that the suit sought to enjoin the execution of a state statute, the Pennsylvania Crime Commission Act, 71 P.S. § 307-7, on the ground of its unconstitutionality. On February 22, 1972, in an opinion published in 347 F.Supp. 138 (M.D.Pa.1972), the motion to convene a Three-Judge Court was denied on the ground that the amended and supplemental complaint failed to raise a substantial federal question in light of several Supreme

---

1. The Pennsylvania Crime Commission is an investigative body created pursuant to the Pennsylvania Crime Commission Act, 71 P.S. § 307-7, "to discover and publicize the state of affairs in the criminal area [in the state of Pennsylvania] to the end that helpful legislation may be proposed and receive needed public support." Dixon v. Pennsylvania Crime Commission, 347 F.Supp. 138, 142 (M.D.Pa.1972).

2. The other defendants are: J. Shane Creamer, who was Attorney General of the Commonwealth of Pennsylvania and chairman of the Pennsylvania Crime Commission during the period of time covered by the complaint; Maurice K. Goddard, who was, and still is, Secretary of the Department of Environmental Resources of the Commonwealth of Pennsylvania; and Robert P. Casey, who was, and still is, Auditor-General of the Commonwealth.

Court decisions, among them Jenkins v. McKeithan, 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969), and Hannah v. Larche, 363 U.S. 420, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960). On March 3, 1972, plaintiffs filed an application for leave to appeal from the order of February 22nd and an application for a writ of mandamus, both of which were denied by the Court of Appeals on March 16 and 23, 1972, respectively. On March 7, 1972, this Court entered an order granting plaintiffs' motion to amend, effective February 22, 1972; the amended and supplemental complaint approved by the order of March 7th is the complaint sought to be amended here. The motions to dismiss under consideration here were filed on March 7 and March 28, 1972.

Thereafter, the case lay dormant for a long period of time. In response to inquiries by this Court, several letters were received during the latter part of 1973 from counsel for all the parties advising that the case in general was still open, but that certain portions of the suit had become moot because of developments subsequent to the filing of the amended and supplemental complaint; counsel assured the Court that they would get together and determine which portions of the suit were still viable. Finally, by letter dated December 12, 1973, Kathleen Herzog Larkin, Esq., Deputy Attorney General of the Commonwealth of Pennsylvania and counsel for all of the defendants except Robert P. Casey, informed the Court that counsel for plaintiffs, Richard Fox, Esq., was in a position to amend his pleadings to account for the subsequent develop-

ments, and that he would submit a motion to amend within a reasonable period of time. Ms. Larkin also asked the Court to stay ruling on her outstanding motion to dismiss in order to allow plaintiffs' attorney an opportunity to move to amend his complaint. Thereafter, nothing was received by the Court until the following summer, when, in response to a June 20, 1974 letter from the Court addressed to all counsel asking for a status report on the case, Ms. Larkin sent a letter on June 28, 1974 advising that Mr. Fox had informed her that it was still his intention to file an amended pleading. Once again, however, nothing was filed for a long period of time, until, on February 13, 1975, the Court scheduled a conference among all counsel for February 18, 1975. At that conference, Mr. Fox assured the Court that he intended to file an amended complaint, and, on the basis of that assurance, an order was issued giving plaintiffs until February 26, 1975, to file any amended or supplemental pleadings. Plaintiffs subsequently filed the instant motion to amend on February 26. Thereafter, the time within which briefs in support of motions must be filed passed without plaintiffs filing either a brief or a motion to enlarge the time for filing,[3] and defendants submitted briefs in opposition to the motion to amend on March 6, 1975. Accordingly, the case is ripe for a decision on all the outstanding motions.

### a. *Motion to Amend*

 While Rule 15(a), Fed.R.Civ. P. provides that leave to amend "shall be freely given when justice so requires [,]" the allowance of an amendment is

---

3. United States District Court for the Middle District of Pennsylvania Rule No. 301.01(d) provides:

 *"Submission of Briefs Supporting Motions.* Within ten (10) days after the filing of any motion prior to trial, the party filing the same shall file three (3) copies of a brief with the clerk and shall serve copies thereof on all parties. Unless otherwise ordered by the court, if supporting legal briefs are

 not filed within the time provided in this rule such motion shall be deemed to be withdrawn."

 In view of the disposition of the motion to amend on its merits (see *infra*) it is not necessary to rest its denial solely on Rule 301.01(d), although said rule does provide an alternate basis for disposition of the motion.

within the sound discretion of the trial court. Zenith Radio Corporation v. Hazeltine Research, 401 U.S. 321, 330, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971). In determining whether to grant a motion to amend, it is relevant to consider the legal sufficiency of the proposed amended pleading. Wright & Miller, Federal Practice and Procedure: Civil, 1487, pp. 432–433. Defendants contend that the instant proposed amended complaint is jurisdictionally deficient because it fails to allege the violation of any federal right. That is, defendants argue that to the extent that the complaint purports to assert jurisdiction in this Court under 28 U.S.C. § 1343 on the basis of a violation of the Civil Rights Act, 42 U.S.C. § 1983, it fails to establish such jurisdiction because it fails to allege "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States, *id.*, and, at most, asserts a violation of state law only, which is insufficient to establish federal jurisdiction. Furthermore, to the extent that the complaint seeks to posit jurisdiction on 28 U.S.C. § 1331 on the basis of violations of substantive Constitutional rights, it fails to allege the violation of any such rights.

■ Bearing in mind that in considering a challenge to the sufficiency of a complaint its well-pleaded allegations must be taken as true and viewed in the light most favorable to the plaintiff, Wright & Miller, Federal Practice and Procdure: Civil, 1363, p. 653, an analysis of the instant proposed amended complaint follows. Counts I through III allege violations of plaintiffs' rights of procedural due process and privacy by both the public hearings and other official aspects of the Pennsylvania Crime Commission's investigation into plaintiffs' activities in 1971 and 1972, as well as the independent publicizing, through press releases and interviews with the news media, of the investigation and of the alleged unlawful conduct of the plaintiffs.[4] Counts IV and V allege a violation of the Contracts Clause, Article I, Section 10 of the United States Constitution, by virtue of the defendant Goddard's unlawful cancellation of a contract with one of the plaintiffs. Even when viewed in the light most favorable to plaintiffs, these allegations are insufficient to form a basis for federal relief.

■■ With respect to the asserted violation of procedural due process, to the extent that the proposed amended

---

4. More specifically, plaintiffs assert that the defendants' participation in the following activities amounted to violations of plaintiffs' rights of procedural due process and privacy. A press release on September 14, 1971 "announced in (sic) investigation because of alleged irregularities in the bidding, award, execution, and interpretation of certain state contracts with Plaintiff Dixon Contracting Co., Inc." (Complaint, Para. 12); on or about October 1, 1971, certain audit reports and findings regarding the contracts held by Dixon Contracting Co., Inc. were released (Complaint, Para. 13); during the latter part of September, 1971, after the plaintiff Commonwealth Development Association of Pennsylvania, Inc. had resisted a subpoena which had issued requiring it to testify before the Pennsylvania Crime Commission, newspaper articles and other media publicity appeared which implied that the resistance was because plaintiffs were guilty of the alleged crimes and irregularities (Complaint, Paras. 17, 18); on October 5 and 7, 1971, the Pennsylvania Crime Commission conducted public hearings regarding a series of state contracts which had been awarded to Dixon Contracting Co., Inc. (Complaint, Para. 19); between September 14, 1971 and early 1972, "a barrage of newspaper articles and other media publicity concerning Plaintiffs and the allegations made by the Defendants" appeared (Complaint, Para. 21); and immediately prior to the general election of November, 1973, in which the plaintiff John P. Dixon was a candidate for the Pennsylvania General Assembly, a letter summarizing the allegations against the plaintiffs, which had previously been ordered sealed and impounded by the Pennsylvania Commonwealth Court, was released "for the purpose of creating a bad, adverse image of John P. Dixon so as to cause his defeat at the poll." (Complaint, Paras. 25, 28).

complaint attacks the actions of the defendants which were part of the investigation by the Pennsylvania Crime Commission into plaintiffs' activities, that attack is foreclosed by an earlier decision of this Court in this case, Dixon v. Pennsylvania Crime Commission, 347 F.Supp. 138 (M.D.Pa.1972). That decision held that plaintiffs' allegation that the Pennsylvania Crime Commission Act, 71 P.S. § 307–7, both on its face and as applied through the investigation of the Crime Commission into plaintiffs' activities, denied the plaintiffs procedural due process failed to raise a substantial federal question, with the result that plaintiffs' motion to convene a Three-Judge Court was denied. The bases of that holding were the findings that "the Crime Commission is an investigative body created to discover and publicize the state of affairs in the criminal area to the end that helpful legislation may be proposed and receive needed public support[,]" Dixon v. Pennsylvania Crime Commission, *supra*, at 142, and that accordingly, under Hannah v. Larche, 363 U.S. 420, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960), since the purpose and practice of the Crime Commission is investigative and legislative rather than prosecutive and accusatory, the procedural due process rights sought to be asserted by

plaintiffs at that time did not apply to the Crime Commission Act either on its face or as applied in the investigation of plaintiffs. There has been no significant change in the facts pleaded by plaintiffs in the instant proposed amended complaint in support of their conclusory claim that their procedural due process rights have been violated.[5] There is no assertion that the nature of the proceedings of the Crime Commission was not what it appeared to be at the time of the earlier decision, nor is there a claim that plaintiffs were at any other time subjected to any judicial or accusatory proceeding at which their procedural due process rights may have been violated by the actions of defendants. Thus, plaintiffs have no tenable procedural due process claim with respect to the actual investigation which was conducted by the Crime Commission.[6]

■ Nor does the defendants' alleged independent publicizing, through press releases and interviews with the news media, of the investigation and of the alleged unlawful conduct of the plaintiffs give rise to any violation of the plaintiffs' procedural due process rights. Again, the plaintiffs point to no judicial or accusatory proceeding at which they may have been prejudiced by the actions of defendants. At best, what is

5. The only fact not pleaded previously is the release of an allegedly defamatory letter just prior to the general election of November, 1973. See note 4, *supra*.

6. It is true that the Court in *Hannah* did not hold that constitutional due process affords no protection to one who is the subject of an investigation by a legislative commission. The Court stated "[o]n the other hand, when governmental action does not partake of an adjudication, as for example, when a general fact-finding investigation is being conducted, it is not necessary that the full panoply of judicial procedures be used[,]." Hannah v. Larche, *supra*, at 442, 80 S.Ct. at 1514, and held that the rights sought to be asserted by plaintiffs did not apply to the proceedings involved in that case. Nevertheless, whatever may be the nature and extent of the rights that apply to a proceeding before such

a legislative commission as is involved here, and although plaintiffs' conclusory complaint does not specify which due process rights were violated by the Commission's investigation (by contrast, the plaintiffs in Hannah v. Larche, *supra*, complained that their rights of apprisal, confrontation and cross-examination had been abridged), it is clear that the facts alleged by plaintiffs would not amount to the abridgement of any due process rights. With respect to the actual investigation conducted by the Commission, plaintiffs have alleged no actions by defendants not authorized by the Crime Commission Act, see note 4, *supra*, and, as this Court pointed out in Dixon v. Pennsylvania Crime Commission, 347 F.Supp. 138, 142, the proceedings of the Crime Commission as provided for by the Act are not materially different from the proceedings upheld in *Hannah*.

complained of here amounts to a cause of action under state law for defamation; it asserts no federally protected right cognizable under the Civil Rights Act. See Peoples Cab Co. v. Bloom, 472 F.2d 163 (3d Cir. 1972).

 Plaintiffs also contend that the defendants' actions amounted to an unlawful invasion of their Constitutional right to privacy. Presumably this contention is intended to engage the right to privacy as articulated in several recent Supreme Court cases, among them Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); Eisenstadt v. Baird, 405 U.S. 438, 92 S. Ct. 1029, 31 L.Ed.2d 349 (1972), and Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), and is, in essence, a claim that the exposure of the plaintiffs to adverse publicity as a result of the defendants' actions resulted in a violation of their right to privacy. Such a contention also fails to establish federal jurisdiction to entertain this suit. The federal right to privacy has thus far been narrowly drawn, and only the most intimate phases of personal life have been held to be constitutionally protected. See, e. g., Griswold v. Connecticut, *supra* (the right of privacy surrounding the marriage relationship precluded the state from forbidding the use of contraceptives); Eisenstadt v. Baird, *supra* (the right recognized in *Griswold* was extended to preserve the right of the individual, married or single, to be free from unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child); and Roe v. Wade, *supra* (the right of privacy was held to encompass a woman's decision whether or not to terminate her pregnancy). See also York v. Story, 324 F.2d 450 (9th Cir. 1963) (plaintiff stated a claim under the Civil Rights Act for invasion of privacy when she alleged that defendant police officer caused the plaintiff, who had come to the station to complain of an as-

sault, to be photographed in the nude in indecent positions, over her objections, and said defendant and another police officer circulated the photographs among other police personnel). Generally, however, the invasion of privacy that results from an exposure to adverse publicity has been held an insufficient incursion to engage the protection of the Constitutional right of privacy recognized in the *Griswold* line of cases. Baker v. Howard, 419 F.2d 376 (9th Cir. 1969); Rosenberg v. Martin, 478 F.2d 520 (2d Cir. 1973); and Mimms v. Philadelphia Newspapers, Inc., 352 F.Supp. 862 (E.D.Pa.1972). Baker v. Howard, *supra,* is illustrative of the general proposition. In *Baker,* the plaintiff alleged violations of his constitutionally protected right of privacy by police officers and radio station personnel who allegedly publicized a police report containing libelous and false statements suggesting that plaintiff had committed a crime notwithstanding the fact that the investigation revealed that no crime had, in fact, been committed. In the course of upholding the district court's dismissal of the suit on the ground that the facts alleged, if proven, would not have established that the plaintiff had been deprived of any right secured by the Constitution, the Court of Appeals stated: "Under some circumstances there can be such a gross abuse of privacy as to amount to an abridgement of fundamental constitutional guarantees. See Griswold v. Connecticut, 381 U.S. 479, 485, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); York v. Story, 9 Cir., 324 F.2d 450, 454–455. But the invasion of privacy here complained of is not, in our opinion, so flagrant that it calls for invocation of the Constitution. We need not decide whether the facts alleged state a claim for breach of a common law right to privacy. This is not a diversity action." *Id.,* at 377. Applying the reasoning of the court in *Baker* to the instant case, I conclude that whatever incursion there was on plaintiffs' privacy

**432**

as a result of the complained-of actions of defendants was not great enough to invoke the Constitution, and that, accordingly, plaintiffs have failed to state a claim of violation of their federally protected right of privacy.

The violation of the Contracts Clause asserted in Counts IV and V of the proposed amended complaint can be dealt with summarily. Those counts allege a violation of Article I, Section 10 of the Constitution by virtue of the defendant Goddard's unlawful cancellation of a contract with one of the plaintiffs. Even assuming, however, that such an unlawful cancellation occurred, the complaint does not state a claim for relief under the Contracts Clause because that clause on its face only applies to a state's passage of a law impairing contractual obligations and does not apply to a suit for damages arising from a breach of contract by a state or one of its subdivisions or agencies. Hays v. Port of Seattle, 251 U.S. 233, 40 S.Ct. 125, 64 L.Ed. 243 (1920).

In sum, plaintiffs' proposed amended complaint failing to allege the violation of any federally protected right, the motion to amend must be denied.[7]

### b. *Motions to Dismiss*

The motion to amend having been denied, defendants' motions to dismiss the underlying complaint (which is actually the first amended and supplemental complaint, filed December 20, 1971) are now ripe for adjudication. They can be disposed of summarily.

The essential difference between the underlying complaint and the proposed amended complaint is that the former attacks the constitutionality of the Pennsylvania Crime Commission Act and the Crime Commission itself in addi-

tion to asserting a violation of personal constitutional rights caused by the defendants' administration of that Act in the course of their investigation of the plaintiffs. To the extent that the complaint attacks the constitutionality of the Act and the Crime Commission, it must be dismissed for the reasons given in the earlier decision in this case, Dixon v. Pennsylvania Crime Commission, 347 F.Supp. 138 (M.D.Pa.1972), which held that the portions of the complaint attacking the constitutionality of the Act failed to raise a substantial federal question. The only personal rights sought to be asserted by the underlying complaint are the same rights of procedural due process and privacy that have been discussed *supra* in the context of holding that the proposed amended complaint fails to allege the violation of a federal right. For the same reasons given in that discussion, the underlying complaint also fails to state a claim for federal relief. Hence it must be dismissed.

United States District Court,
S. D. New York.

---

7. As an additional, independent ground of decision, I would also hold that plaintiffs' motion to amend should be denied because of undue delay in filing the instant motion and proposed amended complaint. See Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1963); Johnson v. Sales Consultants, Inc., 61 F.R.D. 369, 372 (N.D.Ill. 1973).