**George M. SIMON and Eugene P. Weisman, Petitioners,**

v.

**COMMONWEALTH of Pennsylvania, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 6, 1994.

Decided May 22, 1995.

---

Bruce S. Rogow, for petitioners.

Joanna N. Reynolds, Asst. Counsel, for respondent.

Before DOYLE and KELLEY, JJ., and SILVESTRI, Senior Judge.

KELLEY, Judge.

Presently before this court in our original jurisdiction [1] are the motion for judgment on the pleadings of George M. Simon and Eugene P. Weisman (petitioners) and the cross-motion for judgment on the pleadings of

respondent, the Commonwealth of Pennsylvania (Commonwealth).

## I. PROCEDURAL HISTORY

On July 6, 1993, petitioners filed a two count complaint for declaratory and injunctive relief against the Pennsylvania Crime Commission and Michael J. Reilly, Chairman of the Commission (hereinafter collectively referred to as the "Commission"). By order of July 8, 1993, this court directed that the complaint be regarded and acted upon as a petition for review addressed to this court's original jurisdiction. The complaint seeks declaratory and injunctive relief, for the alleged violation of petitioners' state and federal constitutional right to due process.[2]

Preliminary objections filed to the complaint by the Commission were overruled and petitioners' preliminary objections to the preliminary objections were sustained by order of this court dated December 6, 1993. Thereafter, the Commission filed an answer and new matter to the complaint raising the following affirmative defenses in its new matter: sovereign immunity, legislative immunity, specific statutory immunity, failure to give prerequisite notice of action against the Commission, failure to file within the proper statute of limitations, and failure to use administrative remedy.

On March 2, 1994, petitioners filed a motion for voluntary discontinuance of Count II of the complaint and a motion for judgment on the pleadings and brief in support of the motion. Petitioners' motion for voluntary discontinuance was granted by order of this court dated April 5, 1994.

On March 16, 1994, the Commission filed a motion to amend paragraph 9 of their answer. The Commission initially responded to paragraph 9 of the complaint as follows: "Petitioners' averment is a conclusion of law, for which no response is necessary."[3] The

---

1. The Commonwealth Court has original jurisdiction of all civil actions or proceedings against the Commonwealth government, including any officer thereof, acting in his official capacity. *See* 42 Pa.C.S. § 761.

2. Petitioners assert in their brief in support of their motion for judgment on the pleadings that although both federal and state law have guarantees of due process, petitioners seek relief under

state law, specifically the Pennsylvania constitution. Accordingly, this is not a suit for violation of federal civil rights pursuant to 42 U.S.C. §§ 1983 and 1988.

3. Paragraph 9 of petitioners' complaint averred that:

Plaintiffs SIMON's and WEISMAN's personal, professional, and business reputations have

Commission's motion to amend was granted and the Commission amended its answer to paragraph 9 to read: "After reasonable investigation, the Respondent is without knowledge or information to form a belief as to the truth of the averment." On May 2, 1994, petitioners filed their reply to the Commission's new matter.

Thereafter, on September 14, 1994, petitioners filed a motion to substitute the Commonwealth as the respondent in this action in lieu of the Commission and Reilly on the basis that the Commission did not legally exist as of July 1, 1994.[4] The motion was granted by order of this court dated September 23, 1994 and the Commonwealth was substituted as the respondent in this action. On October 28, 1994, the Commonwealth filed an answer to petitioners' motion for judgment on the pleadings and a cross-motion for judgment on the pleadings with a brief in support thereof.

## II. FACTUAL HISTORY

The facts surrounding this action, as pled in petitioners' complaint and admitted in the Commonwealth's answer thereto, are as follows. In 1992, the Commission published a report entitled "Racketeering and Organized Crime in the Bingo Industry." In the report, the Commission makes reference to both petitioners as being involved in the operation of bingo games and through said operation as being connected to organized crime figures.

Prior to the publication of the 1992 report, Petitioners were denied: (1) notice that their reputations were at issue; (2) an opportunity to be heard; (3) an opportunity to confront and cross-examine any witnesses whose statements or testimony was used to produce the published statements; and (4) an opportunity to subpoena witnesses on their own behalf to testify before the Commission.

## III. MOTIONS FOR JUDGMENT ON THE PLEADINGS

Pursuant to Pa.R.C.P. No. 1034, "[a]fter the pleadings are closed, but within such time as not to delay the trial, any party may move for judgment on the pleadings." A motion for judgment on the pleadings is in the nature of a demurrer in which all of the nonmovant's well-pleaded allegations are viewed as true, but only those facts specifically admitted by the nonmovant may be considered against him. *Kerr v. Borough of Union City*, 150 Pa.Commonwealth Ct. 21, 614 A.2d 338, *petition for allowance of appeal denied*, 534 Pa. 651, 627 A.2d 181 (1992). Such a motion may only be granted in cases where no material facts are at issue and the law is so clear that a trial would be a fruitless exercise. *Id.* In passing upon a motion for judgment on the pleadings, the court may consider only the pleadings themselves and any documents properly attached thereto. *Capuzzi v. Heller*, 125 Pa.Commonwealth Ct. 678, 558 A.2d 596, *petition for allowance of appeal denied*, 523 Pa. 650, 567 A.2d 653 (1989).

With these principles in mind, this court will address the petitioners' and the Commonwealth's motions separately. Petitioners move for judgment on the pleadings on the basis that they cannot be deprived of their state constitutional right to possess and protect their reputations without being afforded due process. Petitioners contend that due process requires notice and a meaningful opportunity to hear the Commonwealth's evidence of criminal connections or activity and to be heard on the issue.

The Commonwealth has moved for judgment on the pleadings on the following grounds:[5]

1. Since the Commission served an investigative, fact-finding function only, and did not make accusations of criminal conduct, or serve any prosecutive function, due process protections do not apply to

---

been damaged by the acts of the Defendants in publishing the Commission Report purporting to link them to organized crime.

4. By act of December 23, 1993, P.L. 567, the Commission, created pursuant to the Pennsylvania Crime Commission Act, Act of October 4,

1978, P.L. 876, *as amended*, 71 P.S. §§ 1190.1— 1190.11, ceased to exist effective June 30, 1994.

5. The Commonwealth's arguments in opposition to petitioners' motion and in support of its own motion are essentially the same.

individuals such as petitioners, who were named in an investigative report issued by the Commission;

2. At the time of the filing of the complaint in this matter, the Commission was absolutely immune from any liability for statements made in the reports issued by the agency, pursuant to section 9 of the Pennsylvania Crime Commission Act, 71 P.S. § 1190.9; and

3. Since the petitioners did not file the notice of claim required by The Judicial Code, 42 Pa.C.S. § 5522(a)(2), within six months of publication of the 1992 report (i.e., the date of injury), the claim must be dismissed.

This court will address first the Commonwealth's contentions that it is absolutely immune pursuant to section 9 of the Act and that the claim must be dismissed for petitioners' failure to comply with the notice requirements of 42 Pa.C.S. § 5522(a)(2).

## A. IMMUNITY

The Commonwealth argues that since the Commission was an investigative arm of the General Assembly, its activities and reports are entitled to immunity under either section 9 of the Act or art. II, § 15 of the Pennsylvania Constitution. Section 9 of the Act,[6] 71 P.S. § 1190.9, in effect at the time the report in question was published, provided as follows:

Any statement or disclosure of information made by a commissioner or an employee of the commission during the course of any commission hearing or official proceeding and any report issued by the commission shall be absolutely privileged and such privilege shall be an absolute defense

to any action for invasion of privacy, defamation or other civil or criminal action.

Art. II, § 15 of the Pennsylvania Constitution, known as the Speech and Debate Clause, grants immunity to members of the General Assembly when engaged in speech and debate in the General Assembly. The Commonwealth contends that such immunity extends to the commission as it performed legislative functions by investigating crime in Pennsylvania.

In response, petitioners argue that section 9 of the Act only provides immunity and an absolute defense against damage actions, not equitable actions which are founded on the constitution. Further, petitioners contend that the Commonwealth is not immune pursuant to the Speech and Debate Clause of the Pennsylvania constitution as it does not extend immunity to a body like the commission which had no power to legislate.

 We agree with petitioners that the Commonwealth is not immune under either section 9 of the Act or art. 2, § 15 of our Constitution. With regard to statutory immunity pursuant to section 9, petitioners are only seeking constitutional compliance through equitable relief. They are not seeking monetary damages or criminal remedies. Accordingly, the Commonwealth is not immune pursuant to section 9 of the Act. This holding is consistent with the current state of the law governing sovereign immunity which holds that sovereign immunity does not apply to suits which simply seek to restrain state officials from performing affirmative acts.[7] *See Wilkinsburg Police Officers v. Commonwealth*, 535 Pa. 425, 636 A.2d 134 (1993) (Suits which seek to compel affirmative action on the part of state officials or to obtain money damages or to recover property from

---

6. Section 9 was amended by Act of December 23, 1993, P.L. 567, to read as follows:

 (a) Any statement or disclosure of information made by a commissioner or an employee of the commission during the course of any hearing before the General Assembly shall be absolutely privileged and such privilege shall be an absolute defense to any action for invasion of privacy, defamation or other civil or criminal action.

 (b) This section shall expire June 30, 1994.

7. Petitioners indicate that the Commonwealth has abandoned its affirmative defense of sover-

eign immunity because it has not raised such defense in its motion for judgment on the pleadings. However, the defense of sovereign immunity is non-waivable and this court may consider any properly pled affirmative defense in ruling on petitioners' motion for judgment on the pleadings as the Commonwealth's answer and new matter is a pleading before this court. *See* Pa. R.C.P. No. 1017; *Tulewicz v. Southeastern Pennsylvania Transportation Authority*, 529 Pa. 588, 606 A.2d 427 (1992).

the Commonwealth are within the rule of immunity; suits which simply seek to restrain state officials from performing affirmative acts are not within the rule of immunity.)

With respect to art. II, § 15 of the Pennsylvania constitution, our Supreme Court has held that

[l]egislative immunity [created by the Speech and Debate Clause] does not ... bar all judicial review of legislative acts.... Even where an action against a legislator is barred by the Speech or Debate Clause, legislative employees who participate in unconstitutional activity are responsible for their actions;

*Sweeney v. Tucker,* 473 Pa. 493, 506, 375 A.2d 698, 704 (1977) (citations omitted).

■ Therefore, an investigative arm of the General Assembly, the members of the Commission are subject to liability for any participation in unconstitutional activity.

Accordingly, the Commonwealth is not immune from this action pursuant to the Pennsylvania Constitution or any statute insofar as petitioners are requesting that this court grant equitable relief in the nature of an injunction. As stated previously, this court cannot compel the Commonwealth to perform any affirmative acts such as compelling the Commonwealth to expunge all statements from the 1992 report which refer to petitioners and requiring the Commonwealth to notify all recipients of the 1992 report that statements relative to petitioners are withdrawn. *See* Complaint for Declaratory and Injunctive Relief, Prayer for Relief, p. 9.

### B. COMPLIANCE WITH 42 Pa.C.S. § 5522(a)

■ Next, we will address the Commonwealth's assertion that petitioners' claim must be dismissed due to petitioners' failure to comply with the notice requirements of section 5522(a) of the Judicial Code, 42 Pa. C.S. § 5522(a). This section provides, in part, that:

(a) **Notice prerequisite to action against government unit.—**

(1) Within six months from the date that any injury was sustained or any cause of action accrued, any person who is about to commence any civil action or proceeding within this Commonwealth or elsewhere against a government unit *for damages* on account of any injury to his person or property ... shall file in the office of the government unit, and if the action is against a Commonwealth agency *for damages,* then also file in the office of the Attorney General, a statement in writing, signed by or in his behalf....

(2) If the statement provided for by this subsection is not filed, any civil action or proceeding commenced against the government unit more than six months after the date of injury ... shall be dismissed. (Emphasis added.)

It is clear that section 5522(a) applies only to suits for damages. Therefore, the Commonwealth's contention that petitioners' claim be dismissed on this basis must fail.

### C. PETITIONERS' MOTION

Petitioners contend that they are entitled under the Pennsylvania constitution to the fundamental right of reputation and that this fundamental right cannot be abridged without due process of law. In Pennsylvania, reputation is an interest that is recognized and protected by our constitution. Art. I, § 1 of the Pennsylvania constitution provides:

All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness.

In addition, art. I, § 11 explicitly mandates that a legal remedy be available for injuries to reputation:

All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law and right and justice administered without sale, denial or delay. Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct.

■ Our Supreme Court has previously acknowledged that the Pennsylvania constitution establishes reputation as one of the fundamental rights that cannot be abridged without compliance with state constitutional standards of due process and equal protection. *See R. v. Department of Public Welfare*, 535 Pa. 440, 636 A.2d 142 (1994); *Hatchard v. Westinghouse Broadcasting*, 516 Pa. 184, 532 A.2d 346 (1987); *Wolfe v. Beal*, 477 Pa. 477, 384 A.2d 1187 (1978). Where such a right is protected by the constitutional guarantee of procedural due process, the courts must balance the interests of the individual in procedural protections against the interests of the government in proceeding without protections to determine what due process requires. *Pennsylvania Bar Association v. Commonwealth*, 147 Pa.Commonwealth Ct. 351, 607 A.2d 850 (1992).

The Commonwealth contends in response to petitioners' motion and in support of its own motion that petitioners are not entitled to procedural due process guarantees because the purpose of the commission was legislative, not prosecutive.[8] In support of their argument, the Commonwealth relies upon *Dixon v. Pennsylvania Crime Commission*, 347 F.Supp. 138 (M.D.Pa.1972) and a United States Supreme Court case relied upon by the *Dixon* court, *Hannah v. Larche*, 363 U.S. 420, 80 S.Ct. 1502, 4 L.Ed.2d 1307 *rehearing denied*, 364 U.S. 855, 81 S.Ct. 33, 34, 5 L.Ed.2d 79 (1960).

In *Hannah*, the United States Supreme Court was faced with two issues: (1) Whether the Commission on Civil Rights, which was established by Congress in 1957, was authorized by Congress to adopt Rules of Procedure which provide that the identity of persons submitting complaints to the commission need not be disclosed and that those summoned to testify before the commission, including persons against whom complaints have been filed, may not cross-examine other witnesses called by the commission; and (2)

if so, whether those procedures violated the Due Process Clause of the Fifth Amendment. The *Hannah* court held that the commission's procedural rules were authorized by the Civil Rights Act and did not in view of the purely investigative nature of the commission's function, violate the due process clause of the Fifth Amendment.

In reaching this holding, the United States Supreme Court in *Hannah* opined that:

"Due process" is an elusive concept. Its exact boundaries are indefinable, and its content varies according to specific factual contexts. Thus, when governmental agencies adjudicate or make binding determinations which directly affect the legal rights of individuals, it is imperative that those agencies use the procedures which have traditionally been associated with the judicial process. On the other hand, when governmental action does not partake of an adjudication, as for example, when a general fact-finding investigation is being conducted, it is not necessary that the full panoply of judicial procedures be used. Therefore, as a generalization, it can be said that due process embodies the differing rules of fair play, which through the years, have become associated with differing types of proceedings. Whether the Constitution requires that a particular right obtain in a specific proceeding depends upon a complexity of factors. The nature of the alleged right involved, the nature of the proceeding, and the possible burden on that proceeding, are all considerations which must be taken into account.

363 U.S. at 442, 80 S.Ct. at 1514–1515.

Relying on the United States Supreme Court's reasoning in *Hannah*, the United States District Court for the Middle District of Pennsylvania found in *Dixon* that the court in *Hannah* had made it clear that different administrative agencies may be gov-

---

**8.** The Commonwealth also argues that petitioners are not entitled to judgment as a matter of law as a question of fact exists as to whether petitioners have suffered an injury to their respective reputations. It is the Commonwealth's position that if petitioners' reputations have not been damaged, then there is no need to accord them any due process, because they have not suffered any injury. We reject this argument. Whether, in the end, petitioners suffered an injury is of no consequence, if, in the beginning, their state constitutional right to reputation was put in jeopardy without due process of law. A fundamental interest cannot be abridged without compliance with constitutional standards of due process and equal protection. *Hatchard*.

erned by different procedural requirements, depending on whether it performs an accusatory or investigatory function. 347 F.Supp. at 141. Utilizing the *Hannah* court's analysis of whether the Commission on Civil Rights function was purely investigative and fact-finding, the *Dixon* court stated that:

> As the Supreme Court found in Hannah, the purpose of the Pennsylvania Crime Commission is " ... to find facts which may subsequently be used as the basis for legislative or executive action." Hannah v. Larche, supra [363 U.S.] at 441, 80 S.Ct. at 1514. For example, the Commission is charged with the power and duty "[to] develop standards and make recommendations for actions which may be taken by the State and local governments, .. 71 P.S. § 307–7(2); [to] investigate all crime generally, ... 71 P.S. § 307–7(3); [t]o carry out continued research and planning to improve the quality of criminal justice ..." 71 P.S. § 307–7(5) and to "make a detailed written report of every completed investigation which may include recommendations for *legislative* or *administrative* action." 71 P.S. § 307–7(6). (emphasis supplied)

> In sum then, the Crime Commission is an investigative body created to discover and publicize the state of affairs in the criminal area to the end that helpful legislation may be proposed and receive needed public support. It does not adjudicate or make any determinations of guilt or innocence.

347 F.Supp. at 142.

Accordingly, the *Dixon* court determined that witnesses called to appear before the Commission to testify regarding an investigation being conducted by the Commission into allegedly fraudulent practices in connection with the awarding of state contracts for mine flushing projects were not entitled to the essentials of due process.

Based on the holdings in these two cases, the Commonwealth argues herein that petitioners are foreclosed from succeeding in their motion for judgment on the pleadings and that the holdings suggest that the Commonwealth should prevail on its motion. We disagree.

■ This court has previously pointed out that the United States Supreme Court has recognized that notice is the most basic requirement of due process. *Pennsylvania Bar Association,* 147 Pa.Commonwealth Ct. at 364, 607 A.2d at 856 (citing *Pennsylvania Coal Mining Association v. Insurance Department,* 471 Pa. 437, 452, 370 A.2d 685, 692 (1977), citing *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972)). Notice is necessary both to inform the interested parties of the pending action and to provide an opportunity to present objections.[9]

In the present case, the Commonwealth has admitted in its answer to petitioners' complaint that petitioners were denied, prior to the publication of the 1992 report, notice that their reputations were in issue and an opportunity to be heard. While it appears from the *Hannah* decision that petitioners were not entitled to notice prior to the publication of the 1992 report, the *Hannah* court also stated that whether an individual is entitled to due process depends upon a complexity of factors: (1) the nature of the right involved; (2) the nature of the proceeding; and (3) the possible burden on that proceeding. 363 U.S. at 442.

9. *Pennsylvania Bar Association* addressed, *inter alia,* whether the reporting requirements of section 1822(b)(5) of the Vehicle Code, 75 Pa.C.S. § 1822(b)(5), that suspected fraudulent insurance claims be reported to the Index Bureau within 45 days of receipt, including an identification of the claimants and their attorneys violated the Pennsylvania Bar Associations' members' rights to protect their reputations by providing for the collections and disclosure of damaging information in a manner that is unreasonably and unduly oppressive and that lacks the safeguards of due process. We held therein that section 1822(b)(5) was indeed unconstitutional inasmuch as it required the maintenance of records containing the names of attorneys who represent insurance claimants suspected of fraud because such a scheme ignored the basic due process requirement of notice, and permits the compilation of secret records that tend to unfairly stigmatize an attorney who is reported to the Index Bureau without any opportunity for the attorney to raise an objection to such listing, or even become informed that such a listing will occur. 147 Pa.Commonwealth Ct. at 365, 607 A.2d at 850.

In the present case, the nature of the right involved, preservation of an individual's reputation, is fundamental as it is recognized and protected by the Pennsylvania constitution. As such, and as we have previously stated, that right cannot be abridged without compliance with constitutional standards of due process and equal protection. *Hatchard.*

Next, the nature of the proceeding involved herein is one that is investigatory in nature. However, when viewed in conjunction with the nature of the right involved, the fact that the Commission is investigatory does not justify the abrogation of petitioners' right to possess and protect their reputations without due process of law.

The process utilized by the Commission in conducting its investigations provides no notice to an individual that is being investigated that his or her reputation may be at stake prior to the public dissemination of information that may cause an injury to one's reputation. The only acknowledged recourse an individual had when the Commission was in existence, if he or she believed that his reputation may be affected by a report published by the Commission, was a right of rebuttal after the report became public information. *See* 37 Pa.Code § 123.11. Section 123.11 of Chapter 37 of the Pennsylvania Code, provides that any person who is individually identified in a report of the Commission, and who believes that such report tends to defame or otherwise adversely affect his reputation, shall have the right to appear personally at a public hearing and testify in his own behalf. This right to rebuttal may be claimed as a matter of right up to ten days from the date on which the comment·or evidence was made public. *Id.* Under this scheme, there is no forum for an individual who believes that his reputation has been adversely affected to seek a remedy until after the possible damage has been done. This is clearly an unconscionable abrogation of a state protected constitutional right without procedural due process.

Moreover, providing prior notice to an individual who is going to be named in a report published by the Commission would not be unduly burdensome to the process.[10] This court has held previously that due process requires that a witness summoned to appear before the Commission be given general notice of the nature of the hearing. *Pennsylvania Crime Commission v. Nacrelli*, 5 Pa.Commonwealth Ct. 551 (1972). Further, this court in *Nacrelli* held that fundamental rules of fairness require that investigatory hearings be held in such a manner as to protect the rights, reputation and presumption of innocence of a witness, and to eliminate, when necessary to achieve such goals, news releases, interim publicity and public hearings. It follows, therefore, that fundamental rules of fairness also require that an individual whose constitutional right to reputation may be adversely affected by the publication of a report by the Commission be given prior notice of the publication of such a report. As we stated in *Nacrelli*, "[i]t seems to us to be paradoxical for the law to develop in recent years a new body of principles providing for the necessity of due process hearings to protect citizens' rights in their relations with government in many legal fields ... and then for the law to deny that same due process protection for a citizen caught up in a legislative investigation." 5 Pa.Commonwealth Ct. at 579.

Therefore, when the right of a citizen to preserve his/her constitutionally protected reputation is balanced against the interests of the Commonwealth in proceeding without the constitutional guarantee of procedural due process when conducting an investigation to discover the state of affairs in crime in the Commonwealth, the scale must be tipped in favor of the citizen. Accordingly, we enter the following order consistent with this opinion.

10. We note that whether the petitioners were entitled to an opportunity to confront and cross-examine any witnesses whose statements or testimony was used to produce the published statements and an opportunity to subpoena witnesses on their own behalf to testify before the Commission prior to the publication of the report are not relevant factors which need to be addressed by this court. The relevant factor at issue herein is whether the petitioners' were entitled to notice prior to the publication of the 1992 report.

*ORDER*

NOW, this 22nd day of May, 1995, the Commonwealth of Pennsylvania's motion for judgment on the pleadings is hereby denied.

It is further ordered that the motion for judgment on the pleadings filed on behalf of petitioners, George M. Simon and Eugene P. Weisman, is granted, in part, and denied, in part. Said motion is granted insofar as the Commonwealth of Pennsylvania is hereby enjoined from continued publication and dissemination of the 1992 report entitled "Racketeering and Organized Crime in the Bingo Industry" or any other reports or publications unless the statements regarding the petitioners are deleted. In other respects, petitioners' motion for judgment on the pleadings is denied.