Dorothy **BRADY**, Appellant,

v.

**BRISTOL–MEYERS, INC.**, Appellee.

No. 71–1589.

United States Court of Appeals,
Eighth Circuit.

Submitted April 12, 1972.

Decided May 8, 1972.

Louis Gilden, St. Louis, Mo., for appellant.

George S. Hecker, Thomas C. Walsh, St. Louis, Mo., for appellee; Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo., of counsel.

Vincent A. Fuller, Jr., Atty. EEOC, Washington, D. C., John de J. Pemberton, Jr., Acting Gen. Counsel, Julia P. Cooper, Chief, Appellate Division, Equal Employment Opportunity Commission, Washington, D. C., for amici curiae.

Before VAN OOSTERHOUT, Senior Circuit Judge, and BRIGHT and STEPHENSON, Circuit Judges.

STEPHENSON, Circuit Judge.

Dorothy Brady filed a complaint in the United States District Court for the Eastern District of Missouri, alleging that her employer, Bristol-Meyers, Inc., had engaged in an employment practice violative of Title VII of the Civil Rights Act of 1964.[1] She sought to invoke federal jurisdiction under 42 U.S.C. § 2000e–5(f) and under 42 U.S.C. § 1981. The District Court dismissed the complaint and granted summary judgment, holding (1) that the action under § 2000e–5(f) was time-barred and (2) that § 1981 did not reach "purely private discriminatory employment practices." 332 F.Supp. 995. As the case comes here, we are asked to find error with regard to both grounds of dismissal. The issue of timeliness, however, is one we need not reach. For we have concluded that even if the action is

1. §§ 701–716(c), 42 U.S.C. §§ 2000e to 2000e–15 (1964).

barred under § 2000e–5(f), § 1981 confers federal court subject matter jurisdiction over the allegations of the complaint. We therefore hold that summary judgment was improperly entered and reverse.

## I

The complaint in the instant case seeks declaratory and injunctive relief, as well as the recovery of back pay, and alleges, in substantial part, that Bristol-Meyers has discriminated against the plaintiff on the basis of her race. The basis of the holding of the District Court was its finding that the purpose and function of Title VII of the 1964 Act would be nullified were it to conclude that § 1981 created an independent cause of action for discrimination in private employment. In large measure, that holding rested upon the reasoning of Chief Judge Barrow in Smith v. North American Rockwell Corporation, 50 F.R.D. 515 (N.D.Okl.1970), who, at p. 518, concluded that "to construe 42 U.S.C. § 1981 as supporting . . . subject matter jurisdiction of the present controversy would make Title VII . . . a redundancy and in large part an absurdity." Thus, the real principle that underlay the decision of the District Court is the doctrine of exclusivity—the proposition that Title VII is "exclusive" in its regulation of discriminatory employment practices in the private sector. We find no meaningful support for that position.

## II

§ 1981 provides

"All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

To date, no less than three circuits have explicitly recognized § 1981 as a remedy for *private* discrimination in employment. Young v. International Telephone & Telegraph Co., 438 F.2d 757, 758–760 (CA3 1971); Sanders v. Dobbs Houses, Inc., 431 F.2d 1097, 1099–1100 (CA5 1970), certiorari denied 401 U.S. 948, 91 S.Ct. 935, 28 L.Ed.2d 231; and Waters v. Wisconsin Steel Works of International Harvester Company, 427 F.2d 476, 481–485 (CA7 1970), certiorari denied 400 U.S. 911, 91 S.Ct. 137, 27 L.Ed.2d 151.[2] This court has yet to directly reach the issue, although it has had occasion, in separate but related contexts, to consider its purport and scope. See Carter v. Gallagher, 452 F.2d 315, 325–326, 327–328 (CA8 1971) and Jones v. Alfred H. Mayer Company, 379 F.2d 33, 37–39 (CA8 1967), rev'd 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189.[3] Indeed, in *Carter* it was recognized that

"... § 1981 and the Fourteenth Amendment proscribe any discrimination in employment based on race, whether the discrimination be against Whites or Blacks." p. 325 of 452 F. 2d.

## III

The major thrust of Bristol-Meyers' position is that § 1981 applies only to State action and thus cannot reach discriminatory practices in the private sec-

---

2. See also Lee v. Southern Home Sites Corp., 444 F.2d 143, 146–147 (CA5 1971); Caldwell v. National Brewing Co., 443 F.2d 1044 (CA5 1971); and Boudreaux v. Baton Rouge Marine Contracting Co., 437 F.2d 1011, 1016–1017 (CA5 1971). See generally, R. Larson, The Development of Section 1981 as a Remedy for Racial Discrimination in Private Employment, 7 Harvard Civil Rights-Civil Liberties Law Review 57 (1972).

3. In Norman v. Missouri Pacific Railroad, 414 F.2d 73, 75, n. 3 (CA8 1969), however, this court expressly declined to consider the availability of § 1981 as a jurisdictional predicate for a claim similar to the one presented in the instant case.

tor. Alternatively, the argument is made that if § 1981 was intended by the Congress to reach discriminatory wrongs in the sphere of private employment, this aspect of the statute was impliedly repealed when the Civil Rights Act of 1964 was enacted.

■ These arguments for such a constricted reading of § 1981 seem to us to have been adequately answered by the Court in Jones v. Alfred H. Mayer. There the plaintiff, a negro, had alleged that the defendants refused to sell him a home in a Saint Louis suburb solely on account of his race. He invoked, *inter alia,* 42 U.S.C. § 1982, a companion to § 1981, which provides

"All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."

Over arguments indistinguishable from those advanced here, the Court held that congressional intent supported a construction of the Civil Rights Act of 1866 to "encompass every racially motivated refusal to sell or rent." Moreover, the statute, so construed, was held to be a valid exercise of the congressional power, conferred by the Thirteenth Amendment, to prohibit private discrimination which perpetuates "badges of slavery." [4] There, too, an obvious parallel, and potential substantive overlap and conflict, existed between § 1982 and Title VIII of the Civil Rights Act of 1964. Nevertheless, the two statutes were allowed to stand independently, and both are today available to civil rights litigants seeking to attack private discrimination in transactions involving the sale or exchange of real or personal property. It would seem more accordant with reason that § 1981 receive a similar interpretation, rather, as Bristol-Meyers suggests, than to view it as being circumscribed by doctrinal limitations wholly jettisoned in a case dealing with its companion statute. We therefore conclude that § 1981 extends beyond State action and reaches private racially discriminatory employment practices.

■ We find unpersuasive the notion that the Congress intended somehow to "preempt" existing rights under § 1981 through the enactment of Title VII. The argument overlooks the seemingly obvious fact that Title VII is far broader than § 1981. The latter provision is by its very terms limited to acts of racial discrimination, while Title VII extends outside the area of racial discrimination and proscribes as well discrimination based on religion, sex, or national origin. Moreover, our attention has been directed to nothing in the legislative history of Title VII supportive of the view that it is an exclusive remedy and we can find not one appellate decision which can be said to produce such a conclusion.[5] We must therefore hold that Title VII is but a parallel federal

4. Bristol-Meyers would circumvent and explain away the holding in *Alfred H. Mayer* by advancing the argument that § 1981 derives not from the Civil Rights Act of 1866 but from the Act of 1870, so that, in effect, § 1981 implements the Fourteenth, rather than the Thirteenth Amendment. So viewed, the conclusion is pressed that because the Fourteenth Amendment reaches only State action, § 1981 is burdened with the same substantive restriction. The principal difficulty with the argument is that this court in *Mayer,* speaking about the parentage of §§ 1981 and 1982, noted, at p. 37 of 379 F.2d, that "it is evident from [the language of the Act of 1866] that this statute is the precursor of *both* the present § 1982 and § 1981." (Emphasis supplied.) Nor do we find anything in Colorado Anti-Discrimination Commission v. Continental Airlines, Inc., 372 U.S. 714, 83 S.Ct. 1022, 10 L.Ed.2d 84 (1962), to support Bristol-Meyers' position here. The Court there held that racial discrimination by interstate carriers is not a subject which necessarily requires uniform regulation and over which the States are powerless.

5. We further note that "repeals by implication are not favored." Lynch v. Household Finance Corp., 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (March 23, 1972); *Young, supra,* 438 F.2d at 760–761.

**624**

prohibition against racial discrimination in the private sector which in no way detracts from those rights which exist under § 1981.[6]

The judgment appealed from is reversed and the case remanded with directions to reinstate the complaint and for further proceedings not inconsistent with this opinion.

---

6. Compare Griffin v. Breckenridge, 403 U.S. 88, 96–101, 91 S.Ct. 1790, 29 L.Ed. 2d 338 (1971) and Sullivan v. Little Hunting Park, Inc., 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969).