Bessie M. BATTLE, and Burnie Battle, Jr., a minor, by his parent and natural guardian, Burnie Battle, Sr., Plaintiffs,

v.

DAYTON–HUDSON CORPORATION, a Minnesota Corporation, and John Kelly, Defendants.

No. 4–74 Civ. 127.

United States District Court, D. Minnesota, Fourth Division.

Aug. 22, 1975.

James A. Stolpestad, Stolpestad, Brown & Smith, St. Paul, Minn., for plaintiffs.

Robert T. Stich, Lasley, Gaughan, Reid & Stich, Minneapolis, Minn., for defendants.

## MEMORANDUM AND ORDER

ALSOP, District Judge.

This action arises out of an incident that occured at a retail department store owned and operated by the defendant Dayton-Hudson Corporation (hereinafter Dayton's) in St. Paul, Minnesota. The individual defendant, John Kelly, a security employee of Dayton's, stopped and questioned the plaintiffs, then customers of defendant's retail store, about a pair of pants then thought by Kelly to be missing.

The complaint alleges that the following dialogue took place:

Defendant Kelly: "I observed this boy taking two pairs of pants into the booth and coming out with one."

Plaintiff Bessie Battle: "So?"

Defendant Kelly: "Where are they?"

Plaintiff Burnie Battle, Jr.: "We don't have them."

Defendant Kelly: "Are you sure you didn't tuck them under your coat?"

Plaintiff Burnie Battle, Jr.: "No".

Defendant Kelly: "Do you have them in your bag?"

Plaintiff Burnie Battle, Jr.: "No."

The complaint further alleges that the plaintiffs are black and members of the Negro race and the defendant Kelly is white and a member of the Caucasian race.

The complaint alleges three causes of action which may be fairly summarized as follows:

1. By the accusation cited, the defendants wrongfully detained plaintiffs and conducted a search of their belongings; that by so doing, the defendants conveyed to other employees and members of the general public that plaintiffs were thieves, had stolen a pair of pants and were lying when they denied having stolen such pants. As a result of defendants' false, malicious and unprivileged · statements, the plaintiffs were humiliated, embarrassed and sustained mental pain and anguish. Such allegations sound in tort in the nature of an action for slander.

2. The defendants did not have reasonable cause for believing that the plaintiffs had taken property belonging to Dayton's; that defendants failed to deliver plaintiffs to a peace officer as required by M.S.A. § 629.366 and also violated said statute by falsely arresting and wrongfully detaining and searching plaintiffs. As a result of defendants' conduct, plaintiffs were deprived of their liberty and suffered humiliation, embarrassment and mental anguish. Such action sounds in tort in the nature of false arrest or malicious prosecution.

3. The defendants were acting under color of state statute, to wit M.S.A. § 629.366; that such acts were done willfully and with the intent and result of discriminating against plaintiffs because they were black and members of the Negro race; that plaintiffs were deprived under color of law, of rights, privileges and immunities secured them by the Constitution and laws of the United States, to wit: their rights under the Fourth, Fifth, Tenth and Fourteenth Amendments and rights under 42 U.S.C. §§ 1981, 1982, 1983 and 2000a *et seq.* Further, that their rights under the Constitution and laws of the State of Minnesota were violated. As a result of defendants' conduct, the plaintiffs suffered humiliation, embarrassment and mental pain and anguish and seek damages therefor.

The matter now comes before the court upon motions of the defendants to dismiss under Rule 12(b)(1) for lack of jurisdiction over the subject matter and Rule 12(b)(6), failure to state a claim upon which relief can be granted.

Plaintiffs claim that jurisdiction is conferred upon the court by 28 U.S.C. §§ 1331, 1332 and 1343. Section 1343 grants jurisdiction without regard to the amount in controversy to the same Federal questions which would arise in the present complaint under Section 1331. Wright, *Law of Federal Courts* 2d Ed., (1970) § 32.

Section 1332 does not apply due to the absence of diversity of citizenship. Plaintiffs are residents of Minnesota and Dayton's is a Minnesota corporation doing business in Minnesota.

Federal jurisdiction, if it exists in this instance, is dependent upon the allegations of Count III of the complaint. Clearly, Counts I and II are without an independent Federal basis. Jurisdiction here must depend upon 28 U.S.C. § 1343, read together with 42 U.S.C. §§ 1981, 1982 or 1983, or upon 42 U.S.C. § 2000a *et seq.*

*1983*

Plaintiffs' most serious effort is directed towards the existence of a cause of action under 42 U.S.C. § 1983. Such statute reads as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

In order to proceed under § 1983, it must be shown that the actions of the defendants were "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory."

The defendant Dayton's is a Minnesota corporation which, among other endeavors, owns and operates a retail department store in St. Paul, Minnesota, where the alleged incident occurred. Defendant Kelly was an employee of Dayton's, and was in no manner deputized or acting as a peace officer of the State of Minnesota or any of its municipal subdivisions. Since the defendants are a private corporation and a private individual, plaintiffs seek to bridge the gap between the defendants' conduct and the necessity of "color of state law" by the existence of M.S.A. § 629.366 which reads as follows:

Subdivision 1. A merchant or merchant's employee who has reasonable cause for believing that a person has taken, or is in the act of taking, any article of value without paying therefor, from the possession of the merchant in his place of business or from any vehicle or premises under his control, with the intent wrongfully to deprive the merchant of his property or the use and benefit thereof or to appropriate the same to the use of the taker or any other person,

may detain such person for the sole purpose of delivering him to a peace officer without unnecessary delay and then and there making a charge against such person to the peace officer. The person detained shall be informed promptly of the purpose of the detention and shall not be subjected to unnecessary or unreasonable force, nor to interrogation against his will.

Subd. 2. Upon a charge being made, a peace officer may, without a warrant, arrest any person, whom he has reasonable cause for believing has committed or attempted to commit the offense described in subdivision 1.

Subd. 3. No merchant, merchant's employee, or peace officer shall be criminally or civilly liable for false arrest or false imprisonment or wrongful detention under subdivision 1 or subdivision 2 if his action was based upon reasonable cause.

This statute is similar to legislation enacted by a large number of states in an attempt to increase a merchant's immunity from civil liability in situations where he confronts suspected shoplifters.[1]

■ The issue now before the court is whether or not the existence of this statute transforms the actions of a retail merchant in confronting a suspected shoplifter to actions under color of law.

The authority available to resolve the question is limited. However, there are cases analyzing the effect of similar statutes: *De Carlo v. Joseph Horne Co.,* 251 F.Supp. 935 (W.D.Penn.1966); *Weyandt v. Mason's Stores, Inc.,* 279 F.Supp. 283 (W.D.Penn.1968); *Warren v. Cummings,* 303 F.Supp. 803 (D.Colo. 1969).

In *De Carlo, supra,* the defendant's store detective arrested and allegedly violated plaintiff's constitutional rights. The plaintiff asserted that the defendant's employees were clothed with statutory authority under Pennsylvania's Professional Thieves Act.[2]

The court stated that Pennsylvania cases had interpreted the statute as giving to the detective the authority to arrest offenders and that such authority did not previously exist at common law. *Id.* 251 F.Supp. at 936. The court concluded that the detective was empowered to make a valid arrest under the Professional Thieves Act of 1939 and therefore was acting "under color of any statute, ordinance, regulation, custom, or usage, of any State" within the meaning of the Civil Rights Act when the alleged constitutional deprivations occurred. *Id.*

Two years later, in the same district, a similar question was presented in *Weyandt v. Mason's Stores, Inc., supra.* There, the employees of the defendant allegedly slapped and beat the plaintiff, refused her request for permission to contact her attorney, and forcibly restrained her from leaving a room when she attempted to do so. The plaintiff brought an action for violation of § 1983 claiming that the defendants were acting under color of state law by virtue of 18 Purdon's Pa.Stat.Ann. § 4816.1(b). Such statute provided in part that persons concealing unpurchased goods "may be detained, in a reasonable manner and for a reasonable length of time, by a peace officer or a merchant or a merchant's employe in order that recovery of such goods may be effected. Such detention by a peace officer, merchant or a merchant's employe shall not ren-

1. Note—*The Merchant, the Shoplifter and the Law,* 55 Minn.L.Rev. 825, n. 63 (1971).

2. The Act read:
Whoever, being charged before a magistrate with being a professional thief, burglar, or pick-pocket, after having been arrested, if it shall be proven to the satisfaction of the said magistrate, by sufficient testimony, that he was frequenting or attending any place for an unlawful purpose, he shall, upon conviction in a summary proceeding, be sentenced to imprisonment for a term not exceeding ninety (90) days, at labor, or, in the discretion of the magistrate, be required to enter security for his good behavior for a period not exceeding one (1) year.

der such peace officer, merchant or merchant's employe, criminally or civilly, liable for a false arrest, false imprisonment or unlawful detention."

In analyzing the statute, the court concluded that it was obviously intended to merely license a qualified right of self-help for the recovery of unpurchased goods. *Id.* at 279 F.Supp. 286–287. Since such self-help furthered purely private interests, the defendant was acting under license of state law but was not acting under the authority of state law and therefore failed to meet the requirements of 1983. *Id.* at 287–288. In so holding, the court distinguished *De Carlo* in a footnote. *Id.* at 287.[3]

In *Warren v. Cummings, supra,* the court followed the rationale of *Weyandt.* It held that the state's shoplifting statute merely licensed a shopkeeper to undertake self-help to protect his property and did not vest him with the authority of the state. In so holding, the court stated:

"Although no Supreme Court case has decided a question precisely the same as the instant one, the implication arising from all of the decisions considering Section 1983 is that some direct vesting of authority by the state is necessary to bring an individual within the ambit of that section." [cases omitted] *Id.* 303 F. Supp. at 805

The court here finds the self-help and licensing rationale persuasive in its application to M.S.A. § 629.366. An examination of § 629.366 reveals that it too is only a self-help provision designed to help the merchant protect his property and provide him with immunity for certain actions. It only permits detention of a suspect for a limited purpose and

does not grant the merchant the authority to "arrest".[4]

Where individuals act "in the ambit of their personal pursuits" they do not act under color of state law. *Watkins v. Oaklawn Jockey Club,* 183 F.2d 440 (8th Cir. 1950). The defendants were in pursuit of their own personal interests when they confronted the plaintiffs, and as such, their action cannot be considered to have been taken under color of state law.

The court concludes that defendants here were not acting under "color of state law" when the alleged deprivation of rights occurred and thus the court is without jurisdiction over the subject matter based on the 1983 claim.

### 1981 and 1982

Section 1981 reads:

§ 1981 Equal rights under the law

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

Section 1932 reads:

§ 1982 Property rights of citizens

All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

■ State action is not required under sections 1981 and 1982; private ac-

---

3. The court also distinguished the analogous authority of *Williams v. United States,* 341 U.S. 97, 71 S.Ct. 576, 95 L.Ed. 774 (1951). *Id.* Such distinction is applicable to the present case.

4. There is some authority at common law to do the same. *Restatement (Second) of Torts* § 120A (1965) provides that the merchant is privileged to detain "without arresting" any customer who is reasonably suspected of shoplifting.

tion alone will still permit the court to assert subject matter jurisdiction. *Brady v. Bristol-Meyers, Inc.,* 459 F.2d 621 (8th Cir. 1972); *Jones v. Alfred H. Mayer Co.,* 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968).

In order for a plaintiff to predicate an action on section 1981 or 1982, he must allege that he has been deprived of a right which under similar circumstances, would have been accorded to a person of a different race. *Jones v. Alfred H. Mayer Co., supra; Willis v. Chicago Extruded Metals Co.,* 358 F. Supp. 848 (N.D.Ill.1973).

Plaintiffs here have pleaded with particularity the circumstances allegedly giving rise to their claim. They have alleged that the acts of the store detective were committed with the intent and result of discriminating against plaintiffs because they were black and members of the Negro race.

For the purposes of a motion to dismiss for failure to state a claim, "the material allegations of the complaint are taken as admitted" and "the complaint is to be liberally construed in favor of plaintiff." *Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 1849, 23 L.Ed.2d 404 (1969). The complaint should not be dismissed unless it appears that plaintiff could "prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)

The contract and property rights under sections 1981 and 1982 have been construed very broadly. See, *e. g. Olzman v. Lake Hills Swim Club, Inc.,* 495 F.2d 1333 (2d Cir. 1974), (where the freedom of blacks to come and go as guests of a swim club member suffi-

ciently pertained to a condition of property to be a right capable of being held under § 1982.); *Walker v. Pointer,* 304 F.Supp. 56, 62 (N.D.Tex.1969), (where Negro invitees enjoyed an implied easement of ingress and egress over the common area controlled by defendants).

In addition, it has been stated that a narrow construction of the language of § 1982 would be quite inconsistent with the broad and sweeping nature of the protection meant to be afforded by § 1 of the Civil Rights Act of 1866, 14 Stat. 27, from which § 1982 was derived. *Sullivan v. Little Hunting Park,* 396 U.S. 229, 237, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969).

At this stage of the proceedings, the court cannot say that plaintiffs can prove no set of facts which will entitle them to relief under sections 1981 or 1982. *Cruz v. Cardwell,* 486 F.2d 550, 551–552 (8th Cir. 1973).

Accordingly, defendants' motion to dismiss as it relates to claims based on sections 1981 and 1982 will be denied. Plaintiffs shall amend their complaint in order to limit their allegations to claims under sections 1981 and 1982. *Cody v. Union Electric,* 518 F.2d 978 (8th Cir. 1975)

2000 *et seq.*

42 U.S.C. § 2000 *et seq.* does not provide a private remedy of damages. *Newman v. Piggie Park Enterprises,* 390 U.S. 400, 402, 88 S.Ct. 964, 19 L.Ed. 2d 1263 (1968). The only relief available is injunctive relief. *Lyle v. Village of Golden Valley,* 310 F.Supp. 852, 854 (D.Minn.1970). Plaintiffs have requested only damages as a result of the alleged violation of 2000 *et seq.* Therefore, plaintiffs have failed to state a claim upon which relief can be granted under such provisions.