Arthur Lee **HALL**

v.

**PENNSYLVANIA STATE POLICE et al.**

**Civ. A. No. 76–1744.**

United States District Court,
E. D. Pennsylvania.

Dec. 22, 1976.

Steinberg & Girsh, Philadelphia, Pa., for plaintiff.

Robert P. Kane, Atty. Gen. of Pa., Harrisburg, Pa., L. K. Hankin, Willow Grove, Pa., for defendants.

## MEMORANDUM

TROUTMAN, District Judge.

*Introduction*

In this civil rights action, plaintiff has filed a motion[1] for leave to amend his amended complaint.[2] Plaintiff filed his

1. "Motion to File Second Amended Complaint and to Drop Certain Parties Defendant".

2. Plaintiff's original complaint named as defendants, Colonel James D. Barger, Commissioner, and the Pennsylvania State Police. The

first complaint on behalf of himself and a class to remedy allegedly illegal practices in violation of his civil rights under 42 U.S.C. §§ 1981, 1983, 1985(3) and 1986, and the First, Fifth, Thirteenth and Fourteenth Amendments. Invoking jurisdiction under 28 U.S.C. §§ 1331 and 1343, plaintiff seeks a declaratory judgment as well as a preliminary and permanent injunction. Defendants have moved to dismiss pursuant to Fed.R.Civ.P. 12(b) and have also opposed plaintiff's motion for leave to amend the complaint. We will deny leave to amend and grant defendants' motion to dismiss.

*Procedural History*

A brief statement of the procedural background is pertinent. The original complaint was filed on June 2, 1976, and shortly thereafter, without leave of Court [3] on June 21, 1976, an amended complaint was docketed and served on the defendants. Thereafter, defendants moved to dismiss under Fed.R. Civ.P. 12(b), challenging the sufficiency of the allegations and asserting lack of subject matter jurisdiction. Plaintiff responded by filing a motion for leave to file a second amended complaint and to drop parties defendant [4] and a memorandum in opposition to the motions to dismiss.

*Standard for Review of Amended Complaint*

■ We have concluded that plaintiff's motion for leave to file a second amended complaint must be denied. As a general rule, the federal courts are extremely reluctant to deny leave to amend because of the spirit of liberality of the federal rules and the desire to have litigation proceed on the merits rather than on procedural technicalities reminiscent of a by-gone era. Fed.R. Civ.P. 15(a) expressly provides: "* * *

leave shall be freely given when justice so requires." *See e. g. Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Rotolo v. Borough of Charleroi,* 532 F.2d 920 (3d Cir. 1976). *See also* Fed.R.Civ.P. 1; 3 J. Moore, *Federal Practice* ¶ 15.08[2] (2d ed. 1974).

■ However, it has been held that leave to file an amended complaint must be denied where the proposed amended complaint does not cure the supposed deficiencies of the original or where allowance of the amended complaint would prove a fruitless act. *Foman, supra; Dixon v. Pennsylvania Crime Commission,* 67 F.R.D. 425 (M.D.Pa.1975); *Reaves v. Sielaff,* 382 F.Supp. 472 (E.D.Pa.1974); *Hodnik v. Baltimore & Ohio Railroad,* 54 F.R.D. 184 (W.D. Pa.1972); *Philadelphia Housing Authority v. American Radiator and Standard Corp.,* 309 F.Supp. 1057, 1064 (E.D.Pa.1969); 3 J. Moore, *Federal Practice* ¶ 15.08[4] at 902–905. The standard for testing the sufficiency of the proposed amended complaint is the same as that under Fed.R.Civ.P. 12(b)(6). *Dixon v. Pennsylvania Crime Commission, supra* ; 3 J. Moore, *supra.* Using this standard as our polestar, we turn to the proposed amended complaint, accepting as true all well-pleaded factual averments and construing it with all inferences in favor of the plaintiff. *Jenkins v. McKeithen,* 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

*Summary of the Allegations: Proposed Amended Complaint*

The proposed amended complaint is in five counts. The well-pleaded factual averments state the following: Plaintiff is a

---

amended complaint added as defendants, Commonwealth of Pennsylvania, Milton Shapp "Governor of Pennsylvania and individually", Robert P. Kane, "Attorney General of Pennsylvania and Individually" and the Bank of King of Prussia.

**3.** *See* Fed.R.Civ.P. 15(a) which provides in pertinent part:

"A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within 20 days after it is served * * *".

**4.** Defendants Commonwealth of Pennsylvania and Pennsylvania State Police.

black male residing in Norristown. In Count I he alleges that in August, 1974 an official communication of the Pennsylvania State Police was distributed to all banks in Pennsylvania. The directive stated in part:

"Take photos of any black males or females coming into bank who may look suspicious: [who]

(A) Come in to ask directions

(B) Exchange large bill for small money

(C) Come in for no apparent reason

NOTIFY LOCAL STATE POLICE."

Pursuant to this directive of August, 1974 defendant Bank of King of Prussia and all other similarly situated banks in Pennsylvania acting under color of state law, and in concert and conspiracy with the other defendants,

"* * * commenced programs and practices to intentionally, voluntarily, and arbitrarily photograph all suspicious looking blacks who entered their banks; to cause the film containing such photographs to be marked and stored for later developing and/or to be developed promptly thereafter; to notify their local state police office that they had taken this action; and to deliver to said state police, or otherwise make available to them, such film or photographs—all in furtherance of the suggestions set forth in the directive." (Complaint ¶ 15.)

On March 17, 1976, plaintiff entered the defendant bank to transact business during business hours and was intentionally photographed because of his race in accordance with the Directive. (¶ 16) The film containing the photographs was delivered to the Pennsylvania State Police and the film is being preserved for some future unlawful purposes (¶ 17). Members of the alleged class have been similarly photographed in accord with this practice (¶ 18) which practice was carried out maliciously and willfully with the intent to deprive plaintiff and the members of the class of their lawful rights, or were done with a reckless disregard of the civil and constitutional rights of plaintiff and the plaintiff's class, under federal and state laws. Count I concludes with the allegations that plaintiff and members of the plaintiff class were deprived of their rights under 42 U.S.C. § 1981 and that the plaintiff and members of the class "* * * suffered humiliation, harassment, mental stress and anguish, loss of reputation and other pain and suffering."

Counts II, III and IV incorporate the same facts to support conclusions that these practices violated 42 U.S.C. § 1983, the First, Fifth, Thirteenth and Fourteenth Amendments, 42 U.S.C. § 1985(3) and § 1986. Counts V and VI allege pendent jurisdiction for tortious violations of state law causing plaintiff to suffer the same harm as alleged in Count I.

*Legal Conclusions*

It is the well-settled rule in this Circuit that civil rights cases are required to plead facts with specificity. *Rotolo v. Borough of Charleroi, supra; Robinson v. McCorkle,* 462 F.2d 111 (3d Cir. 1972); *Kauffman v. Moss,* 420 F.2d 1270 (3d Cir.) *cert. denied* 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed.2d 84 (1970). The rationale behind this rule was outlined in this manner in *Kauffman v. Moss,* at 1276 n. 15:

"In recent years there has been an increasingly large volume of cases brought under the Civil Rights Acts. A substantial number of these cases are frivolous or should be litigated in the State courts; they all cause defendants—public officials, policemen and citizens alike—considerable expense, vexation and perhaps unfounded notoriety. It is an important public policy to weed out the frivolous and insubstantial cases at an early stage in the litigation, and still keep the doors of the federal courts open to legitimate claims."

The facts alleged in the proposed amended complaint are vague and conclusory, and are probably insufficient to pass muster under the pleading requirements governing lawyer-drafted civil rights complaints under the *Rotolo* standard. Although we could conclude that the motion for leave to file the second amended complaint should be denied simply because of the lack of factual

specificity, we go further and search the allegations for a possible civil rights violation.

Assuming that the factual allegations of ¶¶ 13–21 are true and giving the plaintiff the benefit of every conceivable inference, we conclude that no claim has been stated under Fed.R.Civ.P. 12(b)(6). The factual foundation on which liability and relief could be predicated is not sufficient.

 Count I alleges a violation of 42 U.S.C. § 1981[5]. In order for a plaintiff to state a claim under § 1981 he must allege that he has been deprived of a right which under similar circumstances would have been accorded to a person of a different race. *Battle v. Dayton-Hudson Corporation*, 399 F.Supp. 900, 905 (D.Minn. 1975). By its very terms, § 1981 is primarily concerned with contractual rights and the protection thereof from racial discrimination. Construing the complaint liberally, however, we cannot perceive a violation of plaintiff's right to make and enforce contracts or any other violation of rights secured under § 1981. *See generally* C. Antieau *Federal Civil Rights Acts* § 20 at 27–29 (Supp.1976). The full text of the allegedly unlawful directive states in its entirety:

### "BANK INFORMATION

1/ Take photos of any black males or females coming into bank who may look suspicious:

 A. Come in to ask directions

 B. Exchange large bill for small money

 C. Come in for no apparent reason.

NOTIFY LOCAL OR STATE POLICE

2/ Get description and license number of any suspicious vehicles in bank area:

 A. Setting in parking area

 B. Cruising slowly

NOTIFY LOCAL OR STATE POLICE

3/ Have personnel in bank assigned to specific details in event of robbery:

 A. Obtain description of vehicle used and direction of travel

 B. Phone police and F.B.I. and seek medical help if anyone injured

 C. Lock front door after robbery

 D. Care for injured."

It is beyond cavil that the defendant bank had the right to protect the security of its premises, which right would include taking photographs of "suspicious" persons of any race or getting the description and license numbers of "suspicious" automobiles in the area. The fact that the directive used the terminology "suspicious black males and females" does not remotely suggest that any rights protected under § 1981 were imperiled; the bank always had the right to photograph "suspicious" persons of any race.[6] Plaintiff simply has not alleged that he was deprived of any contractually related right because of race. Accordingly, we conclude that Count I would fail to state a claim upon which relief could be granted.

 Count II invokes the same factual allegations for the proposition that plaintiff's rights under 42 U.S.C. § 1983, the First, Fifth, Thirteenth and Fourteenth Amendments were infringed and violated. In order to state a claim under § 1983[7], two elements are necessary: conduct (1) "under

---

**5.** 42 U.S.C. § 1981 provides:

"All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

**6.** While the motivation behind such a directive could have been entirely reprehensible and extremely offensive, we do not perceive how that motivation has violated any civil rights protect-ed under § 1981 under the state of facts asserted in the complaint.

**7.** 42 U.S.C. § 1983 provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

color of state law" which (2) deprives the plaintiff of some right, privilege or immunity under the Constitution or laws of the United States. *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). We believe state action has been sufficiently alleged as to all defendants, including the defendant bank, at least for our discussion here. But this Count suffers the same infirmity as is fatal to Count I: plaintiff has not alleged a violation of his federal rights. Insofar as the allegations can be deemed to state a claim for defamation, rights under § 1983 are not implicated. *Paul v. Davis, supra; Mimms v. Philadelphia Newspapers*, 352 F.Supp. 862 (E.D.Pa.1972); *see also Taylor v. Nichols*, 409 F.Supp. 927 (D.Kan. 1976). Moreover, no federal cause of action for invasion of privacy is implicated under the facts alleged. *Paul v. Davis, supra*. Whatever damage to reputation or invasion of privacy has occurred must be presented to a state forum for redress as § 1983 and the Fourteenth Amendment are not "* * a font of tort law to be superimposed upon whatever systems may already be administered by the States. * * *" *Paul v. Davis, supra*, 424 U.S. at 701, 96 S.Ct. at 1160. Moreover, we cannot perceive under the facts alleged, any deprivation of "liberty" within the spheres of the First or Fourteenth Amendments. In short, the facts are insufficient to suggest actionable conduct under § 1983.

Count III alleges violations of 42 U.S.C. §§ 1985(3) and 1986. A necessary element in an action under § 1985(3) is that the plaintiff allege that he was "injured in his person or property". *Griffin v. Breckenridge*, 403 U.S. 88, 103, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). However, the statute was not meant to reach

 "* * * all tortious, conspiratorial interferences with the rights of others * * *". *Id.* 101, 91 S.Ct. at 1798.

As we have previously rehearsed, interest in reputation *per se* is not encompassed under the protective umbrella of the Fourteenth Amendment, absent concomitant impingement on some state-created right such as continued employment or freedom from foreclosure of employment opportunity. *Cf: Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The proposed amended complaint is devoid of any such concrete factual allegations creating even the slightest inference that plaintiff suffered anything more than loss of reputation. Thus, we conclude that no claim has been stated under § 1985(3). *A fortiori*, no claim has been stated under § 1986.[8]

In sum, the factual allegations of the proposed second amended complaint are legally deficient as no federal causes of action have been stated under the appropriate test of Fed.R.Civ.P. 12(b)(6). As the proposed second amended complaint is insufficient as a matter of law, granting leave to file it would be a useless and futile act. *Foman v. David, supra; Dixon v. Pennsylvania Crime Commission, supra*. Accordingly, leave to file the second amended complaint will be denied. We will enter an order dismissing the action for failure to state a claim upon which relief can be granted because the original and amended complaints are deficient as a matter of law. However, the dismissal will be without prejudice.

**8.** Counts IV and V allege pendent state law claim for defamation, invasion of privacy and "tortious wrongs". Neither the original nor amended complaint alleged such pendent claims under state law. We need not review the sufficiency of Counts IV and V because of our conclusion that the federal claims asserted in all the complaints are deficient as a matter of law. As such, there is an absence of a substantial federal claim to which the state claims may be appended. *Tully v. Mott Supermarkets, Inc.*, 540 F.2d 187 (3d Cir. 1976); *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976).