Leroy C. GIPSON, Sr., and Peggy Gipson, his wife, Plaintiffs,

v.

SUPERMARKETS GENERAL CORPORATION, a Delaware corporation and Realty Maintenance, Inc., a New Jersey corporation, Defendants.

Civ. No. 81–2845.

United States District Court, D. New Jersey.

Feb. 7, 1983.

Louis A. DiMare, Jr., Jaffe & Schlesinger, Springfield, N.J., for plaintiffs.

Elliott Abrutyn, Morgan, Melhuish, Monaghan & Spielvogel, Livingston, N.J., for defendant Supermarkets General Corp.

## OPINION

ANNE E. THOMPSON, District Judge.

This matter comes before the court on motion of the defendant, Supermarkets General Corporation ["SGC"], to dismiss this action under *Federal Rules of Civil Procedure* 12(b)(1) for lack of subject matter jurisdiction and under 12(b)(6) for failure to state a claim upon which relief can be granted. Since matters outside the pleadings have been considered by the court, this motion will be treated as one for summary judgment and disposed of as provided by Rule 56. The United States Court of Appeals for the Third Circuit has recently reiterated the standard for granting summary judgment.

> Rule 56 of the Federal Rules of Civil Procedure provides that a trial court may enter summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." We have characterized summary judgment as " 'a drastic remedy,' " and have made clear "that courts are to resolve any doubts as to the existence of genuine issues of fact against the moving parties." *Ness v. Marshall*, 660 F.2d 517 at 519 (3d Cir. 1981) (quoting *Tomalewski v. State Farm Life Insurance Co.*, 494 F.2d 882, 884 (3d Cir.1974)). Moreover, "[i]nferences to be drawn from the underlying facts contained in the evidential sources submitted to the trial court must be viewed in the light most favorable to the party opposing the motion." *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977).

*Sunshine Books, Ltd. v. Temple University*, 697 F.2d 90, 95 (3d Cir.1982), *quoting Hollinger v. Wagner Mining Equipment Co.*, 667 F.2d 402, 403 (3d Cir.1981).

## I. FACTS

The relevant facts and procedural posture of this case are as follows. The plaintiffs are Leroy C. Gipson, Sr. and his wife Peggy Gipson. On December 20, 1979, the Gipsons were grocery shopping at the Linden, New Jersey, Pathmark store which is owned by Supermarkets General Corporation. Gipson alleges that while they were already at the

checkout counter, his wife sent him back into the store to get a different brand of glue. At the same time he picked up a jar of deodorant. Gipson states in his affidavit submitted in opposition to this motion that he placed the deodorant in his overcoat pocket so that he could hold the box of glue up to the light with both hands to read the fine print. As he was returning to the checkout counter with the two items, Gipson was stopped by Detective Guerrero, a store security guard, and accused of trying to steal the glue by placing it up his sleeve. Gipson and Detective Guerrero were then accompanied by Store Manager Zirkel to an area near the store office. Gipson claims that he denied trying to steal anything. Also, he claims that when he was alone with Zirkel, Gipson explained that he was employed by Realty Maintenance, Inc. ["Realty"] as a maintenance man at the SGC warehouse in Woodbridge, New Jersey. Gipson was very concerned that any accusation of shoplifting would affect his job.

Gipson was then presented with a form stating that he released SGC, its officers and employees from any liability in connection with the transaction. (Complaint, Exhibit "A"). The names of the parties and the statement that Gipson was stopped and questioned about the two items were added on the form. Gipson states in his affidavit that he was told that if he did not sign the form, Zirkel would call the Linden policeman in the store and have Gipson and his wife arrested. He claims that he was also told that if he did sign the release form, it would not leave Zirkel's desk.

Gipson signed the release form. He then returned to the checkout counter and purchased the glue and deodorant. The following day, Gipson reported to work at the SGC Woodbridge warehouse. That afternoon the SGC supervisor told Gipson that due to the incident at the Linden Pathmark he received orders from SGC security to fire him.

The Gipsons filed suit against SGC, Service Employees International Union Local 389 AFL–CIO and Realty on September 4, 1981. An amended complaint was filed on October 26, 1981. On March 18, 1982, arbitration proceedings were held. The arbitrator ruled in an opinion dated May 6, 1982, that Gipson was to be reinstated to his former or comparable position with seniority unimpaired and that he was to receive three months back pay. Following the May 6, 1982 award, a stipulation of dismissal was filed as to defendant Local 389.

## II. DISCUSSION

The Gipsons' federal claims against SGC are brought under 42 U.S.C. § 1983 with jurisdiction pursuant to 28 U.S.C. § 1343 and under § 301 of the Labor Management Relations Act of 1947 ["LMRA"], 29 U.S.C. § 185(a). This motion concerns only the § 1983 claims. In the complaint, Gipson alleges that SGC violated his constitutional right not to be deprived of liberty, privacy or property or to be punished without due process of law. More specifically, the complaint states that SGC's employees and agents were acting in concert with the local police, according to a customary plan and under color of law, when Gipson was detained, searched and deprived of his liberty against his will in the Pathmark Linden store. The complaint asserts that SGC's employees and agents acted under color of state law when they detained Gipson. In addition, the complaint asserts that SGC exercised control over the employment policies of Realty causing Gipson to be summarily discharged from his employment with Realty. The complaint also states that by this termination Gipson was deprived of his property rights without due process of law in direct contravention of the Fifth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution and provisions of the LMRA. In support of this assertion, the complaint goes on to state that pursuant to Article I, Paragraph 1 of the Constitution of the State of New Jersey and case law thereunder, the right to employment is a constitutional right protected by state law. (Count 1, §§ 21–24).

SGC filed the instant motion to dismiss returnable April 5, 1982. The long delay in deciding this motion has been due in part to

the plaintiffs' request to adjourn the motion until they had received sufficient answers to their interrogatories. On January 4, 1983, Magistrate John W. Devine ordered SGC to provide more specific answers. The plaintiffs' brief in opposition to SGC's motion was received January 24, 1983. The plaintiffs submitted with their brief an affidavit of Leroy Gipson, Sr., the opinion and award of arbitration, a copy of the release form which also accompanied the complaint and an excerpt from Pathmark's "Store Security and Loss Prevention Guide."

A suit pursuant to § 1983[1] must satisfy two criteria. The plaintiff must show that the defendant deprived him of a right "secured by the Constitution and the laws" of the United States and the plaintiff must show that the defendant deprived him of this right while acting "under color of any statute . . . ." "It is clear that these two elements denote two separate areas of inquiry." *Flagg Brothers, Inc. v. Brooks,* 436 U.S. 149, 155–56, 98 S.Ct. 1729, 1733, 56 L.Ed.2d 185 (1978), *citing Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970).

The court finds that as a matter of law SGC's employees and agents did not act under color of state law. In addition, the court finds that as a matter of law Gipson was not deprived of any constitutional right by the actions of SGC's agents.

## A. State Action

In New Jersey, a merchant's right to detain persons suspected of shoplifting is stated in N.J.S.A. 2C:20–11.[2] The issue of whether a merchant or an employee who detains a customer pursuant to this statute is acting under color of state law appears to be one of first impression in New Jersey.

Generally, courts which have considered similar detentions by store personnel and store detectives have held that they were not acting under color of state law and have dismissed the plaintiff's § 1983 claim. In *Weyandt v. Mason's Stores, Inc.,* 279 F.Supp. 283 (W.D.Pa.1968), the plaintiff alleged that while she was a customer in a department store, store employees took her to a private office; slapped and beat her; refused her request to contact an attorney; forcibly restrained her from leaving the office; forcibly searched her and then took her to the justice of the peace where she was charged with shoplifting. This charge was later dismissed. In reviewing the plaintiff's later § 1983 suit, the federal district court found that the Pennsylvania statute which authorized detention of suspected shoplifters by merchants was intended to license a qualified right of self-help. This permitted detention by a shopkeeper was distinguished from an arrest since it furthered purely private interests—*i.e.,* the recovery of concealed unpurchased goods.

1. 42 U.S.C. § 1983 provides in relevant part:
   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . . laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

2. N.J.S.A. 2C:20–11 provides in pertinent part:
   A law enforcement officer, or a special officer, or a merchant, who has probable cause for believing that a person has willfully concealed unpurchased merchandise and that he can recover the merchandise by taking the person into custody, may, for the purpose of attempting to effect recovery thereof, take the person into custody and detain him in a reasonable manner for not more than a reasonable time, and the taking into custody by a law enforcement officer or special officer or merchant shall not render such person criminally or civilly liable in any manner or to any extent whatsoever.
   Any law enforcement officer may arrest without warrant any person he has probable cause for believing has committed the offense of shoplifting as defined in this section. A merchant who causes the arrest of a person for shoplifting, as provided for in this section, shall not be criminally or civilly liable in any manner or to any extent whatsoever where the merchant has probable cause for believing that the person arrested committed the offense of shoplifting.

*Id.* at 286–87. The *Weyandt* court thus viewed the defendants as acting under license of state law rather than under authority of state law and dismissed the plaintiff's § 1983 suit.

The *Weyandt* opinion was relied on by the court in *Battle v. Dayton-Hudson Corp.,* 399 F.Supp. 900 (D.Minn.1975). In that case, the plaintiff was held in accordance with a statute which allowed a merchant to detain a customer for the "sole purpose of delivering him to a peace officer . . . ." *Id.* at 902-3. The court dismissed the plaintiff's § 1983 claim after finding that the statute licensed self-help, had a limited purpose and did not permit the merchant to make an arrest. *Id.* at 904. Significantly, the court noted that "the defendants were in pursuit of their own personal interests when they confronted the plaintiffs" rather than acting as an extension of the state. *Id.* A similar holding was reached by the court in *Warren v. Cummings,* 303 F.Supp. 803, 805 (D.Colo.1969); *accord, Estate of Iodice v. Gimbels, Inc.,* 416 F.Supp. 1054, 1055 (E.D.N.Y.1976).

The cases discussed above were decided prior to the Supreme Court's decision in *Flagg Brothers, Inc. v. Brooks,* 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978). In *Flagg Brothers,* the Supreme Court held that a warehouseman was not acting under color of state law when he sold goods that he was storing in order to pay past-due storage fees as provided by a New York statute. In reaching this holding, the court rejected the argument that the warehouseman was performing a public function. Rather, the court limited the finding that a private party was performing a public function to the situation when the activity was "exclusively reserved to the state." *Id.* at 157, 98 S.Ct. at 1734. The court offered the holding of elections and the municipal functions of a company town as examples of when a private party would be performing a public function. *Id.* at 158, 98 S.Ct. at 1734. The *Flagg Brothers* decision noted that there was no state participation in the warehouse sale which distinguished its facts from *North Georgia Finishing, Inc. v. Di-Chem, Inc.,* 419 U.S. 601, 95 S.Ct. 719, 42

L.Ed.2d 751 (1975); *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); and *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), in which state action was found. *Id.* 436 U.S. at 160–61 n. 10, 98 S.Ct. at 1735–36 n. 10. In addition, the court rejected the argument that the warehouseman's actions should be attributed to the state since the state adopted the warehouseman's statute. The court stated that the statute permitted these sales, but did not compel them. *Id.* at 165–66, 98 S.Ct. at 1738.

The court in *White v. Scrivner,* 594 F.2d 140 (5th Cir.1979), relied on *Flagg Brothers* in determining whether store employees acted under color of state law when they detained the plaintiffs, searched their purses and, after finding a gun, called the police who arrested the plaintiffs. The court in *Scrivner* found that as in *Flagg Brothers,* the merchant did not perform any functions exclusively reserved to the state. "A storekeeper's central motivation in detaining a person whom he believes is stealing his property is self-protection not altruism." *Scrivner, supra,* at 142 (citations omitted). The court also rejected the argument that state action could be found since the merchants acted under a Louisiana statute which insulated merchants from liability for detention of persons reasonably believed to be shoplifting. Rather, relying on *Flagg Brothers,* the court found that the "Louisiana provision does not compel merchants to detain shoplifters, but merely permits them to do so under certain circumstances. Absent some compulsion or some overt state involvement, no state action can be found because of mere existence of the statute." *Id.* at 143 (citations omitted).

The United States Court of Appeals for the Third Circuit has not specifically reviewed whether a merchant self-help statute authorizes action under color of state law. However, the Court of Appeals recently considered whether the concept of state action should be extended to private persons acting under a state statute in *Luria Brothers & Co., Inc. v. Allen,* 672 F.2d

347 (3d Cir.1982). In *Luria Brothers*, the court reviewed whether a private landlord's posting of a notice of distraint under the Pennsylvania Landlord & Tenant Act constitutes state action. In determining whether the landlord was acting under color of state law, the court noted that as in *Flagg Brothers*, no public official was named as defendant in the complaint and that there was an absence of "overt official involvement." *Id.* at 353. Moreover, "the Commonwealth's authorization of procedures for obtaining relief does not of itself convert into a state actor one who avails himself of those procedures." *Id.* Thus, the court found that "Pennsylvania law permitted, but did not compel" the landlord's actions. *Id.* at 354. The court held that "when a private person merely takes advantage of a self-help remedy recognized by the state, his actions are not attributable to the state." *Id.*

■ Thus, under *Flagg Brothers, Luria Brothers, Scrivner* and in light of the federal district cases discussed above, this court holds that a merchant and his agent and employees are not acting under color of state law when a customer is detained as provided by N.J.S.A. 2C:20–11. The statute permits detention in a reasonable manner for the purpose of recovering unpurchased merchandise. The statute permits the merchant to act for his own benefit, but it does not compel the merchant to detain a suspected shoplifter and does not make the merchant an arm of the state concerned generally with enforcing the state's laws.

There are two exceptions in the case law to the finding that there is no state action. One exception is when the store detective is given authority to actually make arrests. The other exception is when there is a finding that the merchant is acting in concert with the police in accordance with a preconceived, customary plan.

■ In *DeCarlo v. Joseph Horne Co.*, 251 F.Supp. 935 (W.D.Pa.1966), the store detective was given authority to make a legal arrest under the Pennsylvania Professional Thieves Act of 1939. It was this state-given authority which determined the court's finding that the detective acted under color of state law. *Id.* at 937.[3] Similarly, in *Thompson v. McCoy*, 425 F.Supp. 407 (D.S. C.1976), there was a finding that private security guards acted under color of state law based on the intensive regulation by the state *plus* the statutory grant of police authority to make arrests. *See also Williams v. U.S.*, 341 U.S. 97, 71 S.Ct. 576, 95 L.Ed. 774 (1951) (state action found when private detective took an oath and qualified as a special police officer and flashed a special police officer card issued by the Miami police).

The *Weyandt* court distinguished *DeCarlo* and *Williams* as inapplicable to the situation in which there was no allegation that the store detective had any state-given authority to make arrests or act as a police officer. *Weyandt, supra,* at 287. Similarly, in the instant case, there is no suggestion that Detective Guerrero had authority to arrest Gipson or otherwise had state-given authority to display police power.

Gipson argues that the SGC personnel were acting in concert with the local police and according to a customary plan when he was detained at the Pathmark store. There are cases in which courts have found that merchants were acting under color of state law due to the close, pre-arranged association with the police department. *El Fundi v. DeRoche*, 625 F.2d 195 (8th Cir.1980); *Duriso v. K-Mart*, 559 F.2d 1274 (5th Cir. 1977); *Smith v. Brookshire Brothers*, 519 F.2d 93 (5th Cir.1975) *cert. denied,* 424 U.S. 915, 96 S.Ct. 1115, 47 L.Ed.2d 320 (1976); *Classon v. Shopko Stores, Inc.*, 435 F.Supp. 1186 (E.D.Wis.1977). *But see White v. Scrivner*, 594 F.2d 140 (5th Cir.1979); *Davis v. Carson Pirie Scott & Co.*, 530 F.Supp. 799 (N.D.Ill.1982). The court finds, however, that this precedent is not on point with the facts of Gipson's case. The police never became involved in any way with the events

---

**3.** Mere licensing of detectives by the state has been found insufficient to place their actions under color of state law. *Jenkins v. White Castle Systems, Inc.*, 510 F.Supp. 981 (N.D.Ill. 1981).

at the store. They were never called and Gipson was never arrested. Gipson does assert in his affidavit that the store manager threatened to call a policeman in the store to arrest Gipson and his wife if he did not sign the release form. However, assuming for the purpose of this motion that this threat was made, this fact alone does not establish any *police* involvement with the case which would permit the court to make a finding that the Pathmark personnel were acting in concert with the police in a preconceived, customary manner.

 Finally, Gipson argues that while the SGC personnel may have acted under a constitutional statute, they went beyond the scope of the statute by informing Gipson's supervisor of the detention. He asserts that it was this abuse of the statute which gives rise to a cause of action for damages under § 1983. In support of this argument, Gipson relies on *Hollis v. Itawamba County Loans,* 657 F.2d 746 (5th Cir.1981). The court finds this argument unavailing for two reasons. Firstly, as will be discussed, there was no constitutional deprivation as a result of SGC's actions. Secondly, *Hollis* concerns a situation in which abuse of a statutory procedure for replevin invoked state power. However, in the instant case, even if the SGC personnel acted beyond the scope of N.J.S.A. 2C:20–11, that alleged abuse is not sufficient to place the actions under color of state law. *Cf. Weyandt, supra,* (plaintiff allegedly was slapped, beaten, forcibly restrained and searched).

*B. Constitutional Deprivation*

 Gipson asserts that he was deprived of his constitutional right to property when the actions of SGC led to the termination of his job. Property interests are not created by the federal constitution. They are created and defined by an independent source such as state law. *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct.

2701, 2709, 33 L.Ed.2d 548 (1972). A property interest is more than a mere expectation. It is a "legitimate claim of entitlement" which is protected by the due process clause of the Fourteenth Amendment. *Id.*

 Gipson cites Article I, Section I of the New Jersey Constitution and cases interpreting this section as guaranteeing his property interest in his job.[4] However, the court finds that this section of the New Jersey Constitution does not guarantee a person's expectation in holding a particular job. It is true that *Carroll v. Local No. 269, International Brotherhood of Electrical Workers,* 133 N.J.Eq. 144, 146, 31 A.2d 223 (1943) states in dicta that "the right to earn a livelihood is a property right which is guaranteed in our country by the Fifth and Fourteenth Amendments of the Federal Constitution, and by the State Constitution." (Citations omitted). In *Peper v. Princeton University Board of Trustees,* 77 N.J. 55, 77, 389 A.2d 465 (1978), the court states that in "New Jersey, the right to obtain gainful employment and to use the fruits of such labor to acquire property has traditionally been considered basic." However, these are very general statements of a protected right to earn a livelihood as opposed to providing a property interest in any one particular job.

In summary, the court finds that as a matter of law, SGC did not act under color of state law and did not violate Gipson's constitutional rights. Consequently, the court grants summary judgment to SGC on Gipson's claims under § 1983. However, since the plaintiffs also assert federal claims against SGC and Realty under § 301 of the LMRA, the court will not grant summary judgment or dismiss as to any other claims against SGC or Realty at this time.

---

4. Article I, Paragraph 1 of the New Jersey Constitution provides:

 All persons are by nature free and independent and have certain natural and unaliena- ble rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing, and protecting property, and of pursuing and obtaining safety and happiness.