Raymond KLIMZAK and Fred J. Klimzak, Plaintiffs,

v.

CITY OF CHICAGO, et al., Defendants.

No. 82 C 47.

United States District Court, N. D. Illinois, E. D.

April 26, 1982.

Louis F. Cainkar, Chicago, Ill., for plaintiffs.

Darka Papushkewych, Asst. Corp. Counsel, Chicago, Ill., for defendant City of Chicago.

James W. Ozog, Clausen, Miller, Gorman, Caffrey & Witous, Chicago, Ill., for defendant Jewel Companies, Inc.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Raymond ("Raymond") and Fred ("Fred") Klimzak (collectively "Klimzaks"),

father and son, have sued the City of Chicago ("City"), Kane Services, Inc. ("Kane") and Jewel Companies, Inc. ("Jewel") under 42 U.S.C. § 1983 ("Section 1983"), charging several violations of law in the course of a wrongful detention and then wrongful arrest. Both the City and Jewel have moved that they be dismissed from the action for failure to state a cause of action and, in Jewel's case, for lack of subject matter jurisdiction as well.

Because the Complaint may not fairly be read to claim that Jewel acted "under color" of state law as required by Section 1983, the Complaint is dismissed as to Jewel. Kane stands in exactly the same posture as Jewel under the Complaint, and the Court therefore dismisses the Complaint as to Kane sua sponte. Finally, the City's motion to dismiss is likewise granted. All three dismissals are however without prejudice.

## Facts[1]

Jewel contracted with Kane to provide security services at the Jewel store at Cermak Road and Wolcott Avenue, Chicago. On February 1, 1978 Kane security guards on duty at the store detained Fred (then a minor), accused him of shoplifting and searched him. Both the detention and search were without probable cause and unjustified.

Jewel and Kane refused to allow Fred to communicate with his parents or an attorney during his detention. After Fred was allowed to leave the store (the Complaint does not allege just how that came about), Raymond and Fred returned to the store "to ask for an apology due to the public

humiliation and disgrace, mental distress, and anguish suffered by the son."

Jewel's and Kane's agents refused to apologize to Fred, continuing to accuse him of theft. They detained and searched Raymond, threatened to handcuff him and struck him without justification. They refused to allow Raymond to use the public telephone to call the police, but eventually they themselves telephoned police and charged Raymond with a crime (unidentified in the Complaint).

Chicago police officers came to the store, took Raymond to a police station and searched him without probable cause. Kane's and Jewel's agents charged Raymond with criminal conduct requiring bail. Raymond was "forced to defend these malicious charges . . . all to his public disgrace, humiliation, and mental distress." Raymond was not found guilty.

### Jewel and Kane and Section 1983 Liability

Neither Jewel nor Kane nor any employee of either holds any governmental or official position. To invoke Section 1983 Klimzaks must adduce facts that convert such private parties into persons acting "under color" of state law.

■ This Court has recently dealt with the law in this area. See Davis v. Carson Pirie Scott & Co., 530 F.Supp. 799, 801 (N.D.Ill.1982). Without more, a merchant's detention of a suspected shoplifter is not "under color" of state law just because authorized by a statute like the Illinois Retail Theft Act, Ill.Rev.Stat. ch. 38, § 16A–5 (the "Act").[2] Warren v. Cummings, 303 F.Supp.

---

1. This opinion of course applies the familiar principle that on a motion to dismiss all "well-pleaded" allegations of the Complaint are taken as true. Miree v. DeKalb County, 433 U.S. 25, 27 n.2, 97 S.Ct. 2490, 2492 n.2, 53 L.Ed.2d 557 (1977). However, various of the Complaint's allegations are only legal conclusions that do not qualify for such treatment (because not "well-pleaded" within the meaning of the case law). See, e.g., Mescall v. Burrus, 603 F.2d 1266, 1269 (7th Cir. 1979); Mitchell v. Archibald & Kendall, 573 F.2d 429, 432 (7th Cir. 1978). They will be identified at appropriate places in the text.

2. Under the Act the relevant provisions are these:

> Any merchant who has reasonable grounds to believe that a person has committed retail theft may detain such person, on or off the premises of a retail mercantile establishment, in a reasonable manner and for a reasonable length of time for all or any of the following purposes:
> (a) To request identification;
> (b) To verify such identification;
> (c) To make reasonable inquiry as to whether such person has in his possession unpurchased merchandise and, to make reasonable

803 (D.Colo.1969); *Weyandt v. Mason's Stores*, 279 F.Supp. 283, 286–88 (W.D.Pa. 1968). That is only one facet of the general rule that state-enacted self-help provisions do not automatically clothe private actors with state authority. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978).

■ Conversely, statutes like the Act do not provide total insulation from Section 1983 to merchants who act under them. This Court's *Davis* opinion (530 F.Supp. at 802) examined the case law and concluded such merchants could be held state actors for Section 1983 purposes where each of two discrete characteristics is present:

(1) In detaining the suspect, the merchant must act in accordance with a *pre-existing plan* between merchant and police.

(2) That plan's *content* must involve the merchant's exercise of functions "exclusively reserved to the state."

*See generally El Fundi v. Deroche*, 625 F.2d 195, 196 (8th Cir. 1980); *White v. Scrivner Corp.*, 594 F.2d 140, 143–44 (5th Cir. 1979); *Duriso v. K–Mart No. 4195*, 559 F.2d 1274 (5th Cir. 1977); *Smith v. Brookshire Bros., Inc.*, 519 F.2d 93 (5th Cir. 1975).[3]

■ Klimzaks' action against Kane and Jewel cannot survive such an analysis. Complaint ¶¶ 6 and 7 allege in conclusory terms that Kane's security guards and Jewel's store employees "at all times were acting . . . under color of statutes, ordinances, and customs of the State of Illinois and the City of Chicago." In like fashion Complaint ¶ 10 says the conduct of Kane and Jewel "was perpetrated pursuant to customary procedures agreed to by Chicago and its police department and in particular, pursuant to the provisions of Article 16A of Chapter 38 of the Illinois Revised Statutes, Section 16A–5 thereof . . . ."

Of course the first statements, merely echoing Section 1983 without stating *any* factual predicate for their conclusion, cannot suffice. And the Paragraph 10 statement, which alleges no "customary procedures" except conduct in conformity with the Act, is insufficient under *Flagg Bros.* and the *Davis*-analyzed cases—all of which require something more.

It is true that Complaint ¶ 12 alleges the Kane-Jewel conduct toward Fred *violated* the Act because there were no reasonable grounds to believe he had committed a theft. That however does no more than assert a possible claim under state law. Neither adherence to nor violation of the Act transforms the merchant into a state actor.

There are thus no facts to support the "under color" of law conclusions. And no inferences of fact may reasonably be drawn in Klimzaks' favor absent some factual predicate for those inferences. Complaint Count I must fail.

■ Count II, based on the same facts as Count I, can fare no better. Its legal theory is that the Act is an unconstitutional violation of Klimzaks "fifth [sic] and fourteenth amendment" rights. Again state action is required, and again none is alleged.

Count II also advances the legal conclusion:

that the actions of Chicago in allowing the defendants Kane and Jewel to oper-

investigation of the ownership of such merchandise;

(d) To inform a peace officer of the detention of the person and surrender that person to the custody of a peace officer;

(e) In the case of a minor, to inform a peace officer, the parents, guardian or other private person interested in the welfare of that minor of this detention and to surrender custody of such minor to such person.

**3.** Thus *Smith*, 519 F.2d at 94, involved a "customary procedure" under which police routinely arrested suspected shoplifters solely upon the storekeeper's statement. They neither undertook any independent investigation nor required a sworn complaint from the storeowner as a predicate to arrest. In *Duriso*, 559 F.2d at 1277, police would take custody of an arrested shoplifter after the store's manager signed a preexisting form, even when the police search and investigation revealed no evidence of shoplifting. *El Fundi*, 625 F.2d at 196, appears to involve the same sort of "ceding" of public law enforcement functions to store officials. *See also* the discussion of the cases in *White*, 594 F.2d at 143–44.

ate as a private police force are in conspiracy to violate the rights of plaintiff. Once more the factual underpinning for that "conspiracy" conclusion is conspicuously absent. *See Tarkowski v. Bartlett Realty Co.*, 644 F.2d 1204, 1206–07 (7th Cir. 1980); ·*Sparkman v. McFarlin*, 601 F.2d 261, 268 (7th Cir. 1979) (en banc) (Sprecher, J., concurring). Moreover the asserted "conspiracy" is no more than an agreement[4] to allow Kane and Jewel to proceed in accordance with the Act. *That* is not action "exclusively reserved to the state." Like Count I, then, Count II is wanting in state action terms.

Count III does focus on different facts, but the legal result is the same. While the alleged acts may be wrongful, they too fail to convert Kane's and Jewel's agents into state actors. Nothing in Count III (or the Complaint read as a whole) states the Chicago police *agreed* to allow Kane and Jewel to exercise normal police functions (rather than the self-help activities allowed under the Act). No "color" of state law is thus present in Count III either.

### *City Liability Under Section 1983*

Klimzaks are delinquent in responding to the City's motion to dismiss on the briefing schedule established by this Court. Under this District Court's General Rule 13(b), the motion will be considered without awaiting the tardy brief.

By definition the City is a state actor. But to sustain a Section 1983 claim against a municipality, a plaintiff must allege the municipality has *acted* in violation of the plaintiff's federally guaranteed rights. Klimzaks fail that test:

(1) Count I alleges the City "agreed" to Kane's and Jewel's proceeding under the Act by detaining Fred. With no showing that Illinois' enactment was itself federally infirm, the City's "agreement" to its employment by private actors states no claim.

(2) Count II says the City "allow[ed] . . . Kane and Jewel to operate as a private police force. . . ." Again the only *facts* alleged are the private parties' use of the Act, so the same result must be reached as under Count I.

(3) Count III asserts Chicago police officers took Raymond in custody and searched him without probable cause. That claim does not survive under *Monell v. Department of Social Services*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978), for it states nothing more than an impermissible respondeat superior concept.

### *Conclusion*

Both motions to dismiss are granted, and Kane is dismissed as a defendant as well. Because the defects in Klimzaks' Complaint could conceivably be cured by the assertion of appropriate facts, such dismissal of the Complaint is without prejudice. However, if Klimzaks were to seek leave to replead, this Court would expect them and their counsel to be alert to their responsibilities and potential exposure under Fed.R.Civ.P. 11, 28 U.S.C. § 1927 and 42 U.S.C. § 1988.

---

**4.** Given the nature of the "conspiracy" charge, it would appear more accurate to label the purported "co-conspirator" as the State of Illinois (which enacted the statute) rather than the City. For the reasons stated in the text, neither is tenable.