**Geraldine WILLACY, Plaintiff,**

v.

**Lester Leroy LEWIS, Jr., et al., Defendants.**

**Civ. A. No. 84–0652.**

United States District Court, District of Columbia.

June 20, 1984.

H.E. Sullivan, George Harper, George A. Lahey, Hyattsville, Md., for plaintiff.

Joseph Montedonico, Washington, D.C., for defendants Lester Leroy Lewis, Jr., M.D. and Washington Hospital Center.

Robert E. Scott, Jr., Washington, D.C., for defendant Lundberg.

Richard A. Stanley, Asst. U.S. Atty., Washington, D.C., for defendant Shelby L. Lewis, M.D.

Linda Lazarus, Asst. Corp. Counsel, Washington, D.C., for defendant District of Columbia.

## MEMORANDUM

GESELL, District Judge.

Motions now before the Court present the question whether a private physician who detains an individual and makes application for that person's admission to a hospital pursuant to D.C.Code § 21–521, which authorizes such action if the individual's physician has reason to believe the patient is mentally ill, thereby acts "under color of state law" within the meaning of 42 U.S.C. § 1983.[1]

Plaintiff alleges that she was detained and involuntarily committed to a mental hospital based on a misdiagnosis that she was mentally ill. The ten counts of her complaint include claims under the common law, 42 U.S.C. § 1981, and the Fourth Amendment. Defendants, Dr. Leroy Lewis (hereinafter Dr. Lewis), the Washington Hospital Center, and Dr. Ante Lundberg, have moved to dismiss Counts Three, Four and Six of the complaint, which each allege violations of § 1981. Plaintiff has opposed these motions.

In considering a motion to dismiss the Court must, of course, accept the allega-

tions of the complaint as true. The complaint states, in pertinent part, that on the evening of February 4–5, 1983, plaintiff was driven by her employer to the emergency room of the Washington Hospital Center, where she sought medical care from a Dr. Smith. For some reason not stated, plaintiff was instead seen by Dr. Lewis, who told plaintiff she would die if she did not receive medication he sought to prescribe. Plaintiff nevertheless refused treatment, whereupon Dr. Lewis "threatened to detain Plaintiff for an extended period of time" and "forbade Plaintiff from leaving." After consulting with Dr. Lundberg by telephone, Dr. Lewis then called the police and "caused" them to arrest or detain plaintiff. Dr. Lewis also executed an application for plaintiff's emergency hospitalization, and she was taken by the police to St. Elizabeth's Hospital, a federal mental hospital located in the District of Columbia, where she was involuntarily committed. Plaintiff was later released upon a finding by that hospital's staff that she was not mentally ill.

Defendants argue that these allegations fail to state a claim under § 1983 because the requisite "state action" has not been alleged. Plaintiff responds that state action is present because defendants detained her and executed an application for her admission to St. Elizabeth's pursuant to D.C.Code § 21–521, which plaintiff argues "has authorized physicians to perform what is clearly a state function." Section 21–521 provides:

> An accredited officer or agent of the Department of Public Health [Department of Human Services] of the District of Columbia, or an officer authorized to make arrests in the District of Columbia, or a physician of the person in question, who has reason to believe that a person

---

1. 42 U.S.C. § 1983 provides:

    Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immuni-

    ties secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

is mentally ill and, because of the illness, is likely to injure himself or others if he is not immediately detained may, without a warrant, take the person into custody, transport him to a public or private hospital, and make application for his admission thereto for purposes of emergency observation and diagnosis. The application shall reveal the circumstances under which the person was taken into custody and the reasons therefor.

State action exists where "there is a sufficiently close nexus between the state and the challenged action ... so that the [challenged action] may be fairly treated as that of the state itself." *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974). In *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978), the Supreme Court considered under what circumstances the actions of a private citizen can be deemed "state action" under § 1983. State action is present "when the State, by its law, has compelled the act." 436 U.S. at 164, 98 S.Ct. at 1737, *quoting Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 170, 90 S.Ct. 1598, 1615, 26 L.Ed.2d 142 (1970). State action may also be found where private individuals are given authority under state law to perform "public" functions, that is, those functions "traditionally exclusively reserved to the State." 436 U.S. at 157, 98 S.Ct. at 1734, *quoting Jackson,* 419 U.S. at 352, 95 S.Ct. at 454.

The complaint alleges two separate pertinent acts on the part of Dr. Lewis: that he took plaintiff into custody, and that he executed an application for her involuntary admission to St. Elizabeth's. Dr. Lundberg is alleged to have "ordered and/or advised" Dr. Lewis to make application for plaintiff's commitment, an action which Dr. Lundberg "knew, or should have known,

... would result in the false imprisonment and/or involuntary commitment of Plaintiff." In essence Dr. Lundberg is thus charged with the two actions taken by Dr. Lewis. Defendant Washington Hospital Center is likewise charged with the actions of Dr. Lewis under the doctrine of *respondeat superior.*

It is clear that Dr. Lewis was not "compelled" by the District of Columbia to perform the acts alleged. The question, therefore, is whether in allegedly detaining plaintiff and making application for her involuntary admission to a hospital under D.C.Code § 21–521 he performed a function "traditionally exclusively reserved to the State."

A number of federal courts have addressed the issue of whether state action exists when a physician acts pursuant to state statutes similar to D.C.Code § 21–521. Those cases which have involved the mere execution of an application requesting that a person be admitted have uniformly held that no state action is involved.[2] The rationale behind these cases is that the "power" to, in essence, simply *recommend* that a person be involuntarily committed has traditionally not been reserved to state officials but has been made available to the individual's physician, family, and, under some statutes, members of the general public.

District of Columbia law is similar in this respect. Under D.C.Code § 21–541, an individual's parents, spouse, legal guardian or physician, as well as state officials, may petition for that person's involuntary admission based on mental illness. Such a petition must be made to the Commission on Mental Health, and the individual is entitled to a jury trial in Superior Court on the issue of whether he is mentally ill before being committed. Clearly such a petition, which merely invokes the legal process, does not constitute state action.

**2.** *Byrne v. Kysar,* 347 F.2d 734, 736 (7th Cir. 1965), *cert. denied,* 383 U.S. 913, 86 S.Ct. 902, 15 L.Ed.2d 668 (1966); *Landry v. Odom,* 559 F.Supp. 514, 517–18 (E.D.La.1983); *Watkins v.* *Roche,* 529 F.Supp. 327, 330 (S.D.Ga.1981); *Green v. Truman,* 459 F.Supp. 342, 344 (D.Mass. 1978); *Orlando v. Wizel,* 443 F.Supp. 744, 751 (W.D.Ark.1978).

██ The execution of an application by a physician under § 21–521 is no different in this respect. The individual can be admitted only by the receiving hospital itself and only after being examined by "a psychiatrist on duty at the hospital." A court order must be sought before the individual can be detained in excess of 48 hours. §§ 21–522, 523.

> Thus, the consequence of a certificate is nothing more than an examination, albeit involuntary. The power of a certificate is very limited. It does not commit a person for treatment. It merely subjects a person to any emergency care that may be required and an examination by the state to confirm or reject the beliefs stated in the certificate.... Basically, the certificate simply initiates the state's involvement and is not of and in itself the point of origin of state action.

*Watkins,* 529 F.Supp. at 329.[3] The Court concludes, therefore, that in executing an application for plaintiff's involuntary commitment no state action is involved.

██ A more difficult question is presented by the provision in § 21–521 which allows a physician to take a person into custody for the purpose of transporting him or her to a hospital for admission. A series of cases has held that under certain circumstances the exercise of police powers by private individuals pursuant to an authorizing statute does not constitute state action. *Flagg Bros.* and a number of lower court cases found no state action where creditors seized property or disposed of property to satisfy a lien where such seizure and/or disposal was specifically authorized by statute. "This system of rights and remedies [governing private disposal of property subject to a warehouseman's lien], recognizing the traditional place of private arrangements in ordering relationships in the

commercial world, can hardly be said to have delegated to Flagg Brothers an exclusive prerogative of the sovereign." 436 U.S. at 160, 98 S.Ct. at 1735 [footnotes omitted].

Closer to the present·case, the majority of courts which have considered the issue have concluded that no state action is involved where shopkeepers act pursuant to statutes which allow them to detain and in some instances to search suspected shoplifters.[4] Several factors, however, suggest that the present circumstances may be distinguishable. First, both *Flagg Bros.* and the cases involving detention of shoplifters are grounded on the notion that the state has simply allowed private individuals to exercise traditional "self-help" measures to protect their own property.

> A merchant's detention of persons suspected of stealing store property simply is not an action exclusively associated with the state. Experience teaches that the prime responsibility for protection of personal property remains with the individual. A storekeeper's central motivation in detaining a person whom he believes to be in the act of stealing his property is self-protection, not altruism. Such action cannot logically be attributed to the state.

*White v. Scrivner Corp.,* 594 F.2d at 142 [citations omitted]. A physician who detains an individual "likely to injure himself or others" pursuant to § 21–521, by contrast, is not simply availing himself of a "self-help" remedy with the acquiescence of the state; instead, the function he performs is more akin to the state's power and duty to protect against threats to the general public and to care for those unable to care for themselves.

A second possible distinguishing factor is also present. The role played by the police

---

**3.** That lesser procedural protections are afforded before commitment initiated with an application executed by a physician than a petition by a family member may be justified by the greater likelihood that the physician's application is accurate. *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

**4.** *White v. Scrivner Corp.,* 594 F.2d 140, 143 (5th Cir.1979); *Gipson v. Supermarkets General Corp.,* 564 F.Supp. 50, 55 (D.N.J.1983); *Klimzak v. City of Chicago,* 539 F.Supp. 221, 223 (N.D.Ill. 1982). *But see El Fundi v. Deroche,* 625 F.2d 195, 196 (8th Cir.1980) (finding state action).

**350**

as alleged in the complaint raises the question whether defendants acted "in concert" with state officials or as part of a preconceived plan involving state officials. The bare allegations of the complaint, however, are not sufficient to address this question with any certainty.

Finally, plaintiff's allegation that Dr. Lewis "was not, and never had been, the physician Plaintiff selected or went to for help," Complaint ¶ 7, raises serious questions concerning whether Dr. Lewis was "a physician of the person in question" within the meaning of § 21–521. *See Williams v. Meredith*, 407 A.2d 569 (D.C.App.1979). What effect this has on plaintiff's cause of action under § 1983 is also unclear.

For these reasons, therefore, it is difficult to determine at this stage whether state action might be present, and the Court is reluctant to attempt such a determination prior to development of a fuller factual record. Accordingly, defendants' motions to dismiss Counts Three, Four and Six are each denied.